ACCEPTED
03-15-00065-CR
5648987
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/12/2015 8:20:10 AM
JEFFREY D. KYLE
CLERK

NO. 03-15-00065-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/12/2015 8:20:10 AM
JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS FOR THE
THIRD SUPREME JUDICIAL DISTRICT
AUSTIN, TEXAS

_____

ELIZABETH ANN BLACK, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

_____

ON APPEAL FROM
COUNTY COURT-AT-LAW NUMBER FIVE
TRAVIS COUNTY, TEXAS
CAUSE NO. C1-CR-13-217530

_____

APPELLANT'S BRIEF

_____

MERIL "GENE" ANTHES, JR.
State Bar No. 24040125
Gene@GBAfirm.Com
CHRISTOPHER M. GUNTER
State Bar No. 08624600
Chris@GBAfirm.Com
GUNTER, BENNETT & ANTHES, P.C.
600 West Ninth Street
Austin, Texas 78701-2212
(512) 476-2494
(512) 476-2497 Facsimile
Attorneys for Appellant

_____

ORAL ARGUMENT IS REQUESTED

_____

# IDENTITY OF PARTIES AND COUNSEL

1.    Appellant:                                  Elizabeth Ann Black

2.    Appellee:                                  The State of Texas

3.    Trial counsel for Appellant:          Christopher M. Gunter and
Meril "Gene" Anthes, Jr.
Gunter, Bennett & Anthes, P.C.
600 West Ninth Street
Austin, Texas 78701

4.    Trial counsel for the State:          Christyne Harris Schultz
Assistant County Attorney
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767

5.    Counsel on appeal for Appellant:    Meril "Gene" Anthes, Jr. and
Christopher M. Gunter
Gunter, Bennett & Anthes, P.C.
600 West Ninth Street
Austin, Texas 78701

6.    Counsel on appeal for the State:    Giselle Horton
Assistant County Attorney
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767

7.    Trial Judge:                         The Honorable Nancy Hohengarten
County Court-at-Law No. Five
Travis County, Texas
Blackwell/Thurman Criminal Justice Center
509 West 11th, 4th Floor
Austin, Texas 78701

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL ....................................................... i

TABLE OF CONTENTS ................................................................................. ii

INDEX OF AUTHORITIES............................................................................ iv

STATEMENT OF THE CASE......................................................................... 1

STATEMENT OF FACTS .............................................................................. 2

ISSUE PRESENTED ...................................................................................... 4

SUMMARY OF THE ARGUMENT .............................................................. 4

ARGUMENT .................................................................................................. 5

    I.    STANDARD OF REVIEW.................................................................. 5

    II.    BURDEN OF PROOF......................................................................... 6

    III.    A PRIMER ON TRAFFIC CONTROL DEVICES.................................. 7

        A.    Texas MUTCD & Austin Transportation Criteria Manual................ 7

        B.    Definition of Barricade.................................................................. 8

        C.    Proper use of barricades. .............................................................. 9

    IV. APPELLANT DID NOT COMMIT A TRAFFIC OFFENSE ..................... 10

        A.    Appellant did not violate § 472.022 or § 544.004 of
            the Texas Transportation code .......................................................... 10

            1. Appellant did not commit the traffic offense of driving
               around a barricade because she did not drive "around"
               the barricade and the "barricade" did not meet the statutory
               definition of barricade .................................................................. 11

2. Appellant did not commit the traffic offense of failing to comply with a traffic-control device because the barricades, Officer Rodriguez, and signage were not in the proper position ....................................................... 14

V. CONCLUSION ..................................................................... 20

PRAYER .................................................................................... 21

CERTIFICATE OF COMPLIANCE .................................................... 22

CERTIFICATE OF SERVICE ............................................................ 22

# INDEX OF AUTHORITIES

**CASES**                                                                                                                  **PAGE**

Castro v. State, 227 S.W.3d 737 (Tex. Crim. App. 2007).........................  6

Davis v. State, 947 S.W.2d 240 (Tex. Crim. App. 1997)..........................  6

Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005)...........................  6

Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997).......................  5

Issac v. State, 982 S.W.2d 96 (Tex. App. 1998) aff'd,
   989 S.W.2d 754 (Tex. Crim. App. 1999) ...............................................  2

Katz v. United States, 389 U.S. 347, 88 S.Ct. 507,
   19 L.Ed.2d 576 (1967)).........................................................................  6

Maxwell v. State, 73 S.W.3d 278 (Tex. Crim. App. 2002) .......................  5

Oles v. State, 993 S.W.2d 103 (Tex. Crim. App. 1999) ...........................  5

State v. Chacon, 273 S.W.3d 375 (Tex. App.—San Antonio
   2008, no pet.) .........................................................................................  11

Terry v. Ohio, 392 U.S. 1(1968)................................................................  6

United States v. Alvarado-Zarza, 782 F.3d 246 (5th Cir. 2015) ...............  6

Viveros v. State, 828 S.W.2d 2 (Tex. Crim. App. 1992)...........................  6

**CONSTITUTIONS & STATUTES**

U.S. CONST. amend. IV ..............................................................................  6

U.S. CONST. amend. XIV ............................................................................  6

TEX. CONST. art. I § 9................................................................................  6

TEX. CONST. art. I § 10..............................................................................  6

## CONSTITUTIONS & STATUTES PAGE

TEX. CODE CRIM. PRO. art. 38.23 ................................................................ 6

TEX. R. OF EVID. 201................................................................ 2

TEX. GOV'T CODE § 311.011 ................................................................ 11

TEX. TRANSP. CODE § 427.022 ................................................................ *passim*

TEX. TRANSP. CODE § 471.004 ................................................................ 14

TEX. TRANSP. CODE § 544.001 ................................................................ 7, 15, 19

TEX. TRANSP. CODE § 544.004 ................................................................ *passim*

AUSTIN CITY CODE § 14-8-54 ................................................................ 7

## Manuals

Texas Manual Uniform Traffic Control Devices, 2011 ed., revision 2..... *passim*

NO. 03-15-00065-CR

_____

IN THE COURT OF APPEALS FOR THE
THIRD SUPREME JUDICIAL DISTRICT
AUSTIN, TEXAS

_____

ELIZABETH ANN BLACK, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

_____

ON APPEAL FROM
COUNTY COURT-AT-LAW NUMBER FIVE
TRAVIS COUNTY, TEXAS
CAUSE NO. C1-CR-13-217530

_____

APPELLANT'S BRIEF

_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

COMES NOW Appellant Elizabeth Ann Black, by and through her undersigned counsel, and offers Appellant's Brief, by which Appellant respectfully shows the Court the following:

## STATEMENT OF THE CASE

Appellant was charged by information with driving while intoxicated alleged to have occurred on October 12, 2013. C.R. 6, 9.[1] Appellant filed a motion to

_____

[1] "C.R." refers to the Clerk's Record and "R.R." refers to the Court Reporter's Record.

1

suppress evidence contending the stop of her vehicle was without reasonable suspicion or probable cause and therefore illegal. C.R. 33. After a pre-trial evidentiary hearing, Judge Hohengarten denied Appellant's motion to suppress evidence on January 13, 2015. C.R. 35. Appellant entered a plea of no contest on January 13, 2015. C.R. 38-39. She preserved her right of appeal and the trial court certified her right to appeal those issues addressed at the hearing on her motion to suppress. C.R. 51. Appellant subsequently filed this appeal. C.R. 43.

## STATEMENT OF FACTS

At approximately 3:00 a.m. on Friday, October 11, 2013, Appellant was traveling on the South Mopac service/feeder road. R.R.9; C.R. 6; State's Exhibit 1, 2[2]. Appellant was traveling toward downtown Austin on the South Mopac service road. To avoid confusion regarding the cardinal directions see the aerial map attached as attachment 1.[3] Austin Police Department Officer Domingo Rodriguez was parked in the left lane of the service road behind a barricade which was also located in the left lane near the intersection of the service road and Andrew Zilker Road. R.R. 8. The barricade was in place because of the Austin City Limits music festival. C.R. 6. Officer Rodriguez's vehicle was parked roughly parallel to and behind the barricade. R.R. 8; State's Exhibit 2. Officer Rodriguez's overhead red

---

[2] State's Exhibits 1 and 2 refer to the exhibits admitted by the State during the pretrial hearing. Both exhibits are part of Volume 3 of the Reporter's Record.

[3] Issac v. State, 982 S.W.2d 96, 99-100 (Tex. App. 1998) aff'd, 989 S.W.2d 754 (Tex. Crim. App. 1999) (appellate court may take judicial notice of map); TEX. R. OF EVID. 201.

and blue lights were activated in the steady on position; that is, his lights were on but not flashing. R.R. 8, 19.[4] The roadway in question consists of two lanes of travel in the same direction. *See* R.R. 6-8; State's Exhibit 2; Attachment 1. Appellant was in the right lane of travel. State's Exhibit 2. Officer Rodriguez testified that there were no physical barricades in Appellant's lane of travel. R.R. 9, 18, 19; State's Exhibit 2.[5]

A sign north of Officer Rodriguez' location (behind him and past the barricade) was in place and read "Barton Springs Road to close through Zilker Park Friday 12 a.m. until Monday 3 a.m." R.R. 7, 21-22. A second sign was also in place somewhere that said "northbound was shut down for thru traffic." R.R. 7. The record is not clear where this second sign was located or what northbound roadway was shut down. Appellant drove by Officer Rodriguez at 2:59:41 according to the time-stamp in the upper right-hand corner of his in-car video. *See* State's Exhibit 1. Officer Rodriguez's video makes it clear that there was absolutely nothing in Appellant's lane. After Appellant passed Officer Rodriguez's position he immediately followed and stopped her using his overhead lights and siren. R.R. 10; State's Exhibit 1. She was subsequently arrested for Driving While

---

[4] Officer Rodriguez testified that he had his steady red and blue lights on. R.R. 19. This is corroborated by his in-car video; it's clear he turned his flashing red and blue lights on after Appellant's vehicle passed him. *See* State's Exhibit 1 at the 02:59:55 timestamp.

[5] There were no barrels, cones, barricades or any other barrier in Appellant's lane of travel. In State's Exhibit 2 other vehicles are seen traveling on Barton Springs Road past the barricade as Officer Rodriguez administers the SFST's the Appellant.

Intoxicated. As Officer Rodriguez stopped Appellant, another officer took his place at the barricade. R.R. 25. Unlike Officer Rodriguez, the backup officer used his vehicle to block the right lane of travel. At the end of Officer Rodriguez's video he drives back toward the barricade and the backup officer's vehicle can clearly be seen in the proper position blocking vehicles from traveling in the right lane. *See* State's Exhibit 1. Officer Rodriguez testified and the State argued that his reason for stopping Appellant was that she disregarded a barricade.[6] R.R. 30.

## ISSUE PRESENTED

Did Officer Rodriguez have reasonable suspicion upon which to justify stopping Appellant's vehicle?

## SUMMARY OF THE ARGUMENT

Officer Rodriguez detained Appellant for driving around a barricade in violation of § 472.022 of the Texas Transportation Code. Though not raised by the State at the motion to suppress hearing Appellant expects the State to argue that he may have detained her for failing to comply with a traffic control device in violation of § 544.004 of the Texas Transportation Code. Because Appellant's lane of travel was not blocked by a barricade, a reasonable person in Appellant's position would feel free to continue traveling in her lane of travel. Since Appellant did not drive "around" a barricade to continue in her lane of travel she was not in

---

[6] TEX. TRANSP. CODE § 427.022.

4

violation of § 472.022. Moreover, the "barricade" and "signs" in question do not meet the statutory definition as set out in § 472.022, consequently she was not in violation of that statute. Though not raised by the State, it cannot be asserted that Appellant failed to comply with a traffic control device in violation of § 544.044 because the devices in question were improper. Because Appellant committed no traffic offense, Officer Rodriguez lacked the requisite reasonable suspicion to detain Appellant.

## ARGUMENT

## I. STANDARD OF REVIEW

The proper standard for "reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the court's application of the law." Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). This means that a trial court's ruling on a motion to suppress is generally reviewed by an abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). However, where the facts are undisputed (as in Appellant's case) and the case presents the court with a question of law the court is to apply a *de novo* review. Id. (citing Guzman, 955 S.W.2d at 89). Thus, this Court is tasked with

reviewing Judge Hohengarten's decision *de novo* as there is no dispute regarding the facts.

## II. <u>BURDEN OF PROOF</u>

The State bears the burden of proving that Officer Rodriguez had reasonable suspicion to detain Appellant.[7] "Warrantless seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" <u>United States v. Alvarado-Zarza</u>, 782 F.3d 246, 249 (5th Cir. 2015) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968); U.S. CONST. amend. IV & XIV; TEX. CONST. art. I §§ 9, 10; TEX. CODE CRIM. PRO. art. 38.23. When police conduct a warrantless seizure "the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law." <u>Castro v. State</u>, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). "[R]easonable suspicion requires 'that there is something out of the ordinary occurring and some indication that the unusual activity is related to a crime.'" <u>Davis v. State</u>, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting <u>Viveros v. State</u>, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)). A reasonable-suspicion determination should be made by considering the totality of the circumstances. <u>Castro</u>, 227 S.W.3d at 741; <u>Ford v. State</u>, 158 S.W.3d 488, 492-493 (Tex. Crim. App. 2005). Ultimately, the State

---

[7] There is no dispute that Officer Rodriguez detained Appellant.

6

must prove that Officer Rodriguez had reasonable suspicion to believe Appellant was committing a crime.

## III. A PRIMER ON TRAFFIC CONTROL DEVICES

### A.   Texas MUTCD & Austin Transportation Criteria Manual.

State and local traffic control device manuals offer guidance regarding the proper placement of barricades. The Texas Transportation Code requires that the Texas Transportation Commission adopt a manual and specifications for a uniform system of traffic-control devices. TEX. TRANSP. CODE § 544.001. Attachment 2 consists of relevant excerpts from the current Texas Manual on Uniform Traffic Control Devices ("Texas MUTCD").[8] The Austin City Code requires that if a barricade is to be used, it shall conform to the Texas MUTCD. Austin City Code § 14-8-54. The City of Austin also promulgated a traffic control device manual called the Transportation Criteria Manual. [9] Section 8.3.0 of the City of Austin Transportation Criteria Manual also refers to the Texas MUTCD with regard to the placement of signs. [10]

---

[8] Texas Manual Uniform Traffic Control Devices, 2011 ed., revision 2. The full version of the Texas MUTCD can be found at: http://www.txdot.gov/ government/enforcement/signage/tmutcd.html.

[9]  Available  at:  https://www.municode.com/library/tx/austin/codes/transportation_criteria _manual?nodeId=TRCRMA_S8TRCO.

[10]  Available  at:  https://www.municode.com/library/tx/austin/codes/transportation_criteria _manual?nodeId=TRCRMA_S8TRCO.

**B.      Definition of Barricade.**

The Texas MUTCD defines a barricade as a "portable or fixed device having from one to three rails with appropriate markings and is used to control road users by closing, restricting, or delineating all or a portion of the right-of-way." Attachment 2, pg. 9. The manual further notes that "Barricades may be used to mark any of the following conditions: A. A roadway ends, B. A ramp or lane closed for operational purposes, or C. The permanent or semi-permanent closure or termination of a roadway." Attachment 2, pg 4. Section 8.5.7(B)(4) of the Austin Transportation Criteria Manual defines barricades as "a portable or fixed device having from one (1) to three (3) rails with appropriate markings used to control traffic by closing, restricting or delineating all or a portion of the right of way." [11] Most importantly, as it pertains to the offense of failure to obey warning signs and barricades found at section 472.022, a barricade is defined as:

> an obstruction: (A) placed on or across a road, street, or highway of this state by the department, a political subdivision of this state, or a contractor or subcontractor construction or repairing the road, street, or highway under authorization of the department or a political subdivision of this state; and (B) placed to prevent the passage of motor vehicles over the road, street or highway during construction, repair, or dangerous conditions.

TEX. TRANSP. CODE 472.022.

---

[11]      Available at: https://www.municode.com/library/tx/austin/codes/transportation_criteria_manual?nodeId=TRCRMA_S8TRCO.

**C. Proper use of barricades**.

The Texas MUTCD notes that barricades may also be used as Channelizing

Devices:

> The function of channelizing devices is to warn road users of
> conditions created by work activities in or near the roadway and to
> guide road users. Channelizing devices include cones, tubular
> markers, vertical panels, drums, barricades, and longitudinal
> channelizing devices. Channelizing devices provide for smooth and
> gradual vehicular traffic flow from one lane to another, onto a bypass
> or detour, or into a narrower traveled way. They are also used to
> channelize vehicular traffic away from the work space, pavement
> drop-offs, pedestrian or shared-use paths, or opposing directions of
> vehicular traffic.

Attachment 2 pg. 8.

Barricades may also be used as a checkpoint or traffic control point. When

used in such a manner the Texas MUTCD requires a sign at the barricade. The

manual notes that:

> The TRAFFIC CONTROL POINT (EM-3) sign (see Figure 2N-1)
> shall be used to designate a location where an official traffic control
> point has been set up to impose such controls as are necessary to limit
> congestion, expedite emergency traffic, exclude unauthorized
> vehicles, or protect the public. The sign shall be installed in the same
> manner as the AREA CLOSED sign (see Section 2N.04), and at the
> point where traffic must stop to be checked. The standard STOP (R1-
> 1) sign shall be used in conjunction with the TRAFFIC CONTROL
> POINT sign.

Attachment 2 pg. 6. Like the Texas MUTCD, The Austin Transportation Criteria

Manual requires that "[w]hen a roadway is legally closed but access must still be

allowed for local traffic, the [ ] barricade should not be extended completely across

9

a roadway. A sign with the appropriate legend concerning permissible use by local traffic shall be mounted." [12] The Austin Transportation Criteria Manual further states, "Where provision is made for access of authorized equipment and vehicles, the responsibility for the Type III barricades should be assigned to a person to ensure proper closure at the end of each work day." [13]

## IV. APPELLANT DID NOT COMMIT A TRAFFIC OFFENSE.

### A. Appellant did not violate § 472.022 or § 544.004 of the Texas Transportation Code.

The detention of Appellant can only be based on her alleged violation of either § 472.022 (obeying warning signs and barricades) or § 544.004 (compliance with traffic-control device) of the Texas Transportation Code. *See* C.R. 6, R.R. 9. The focus of Officer Rodriguez' testimony seems to be that he stopped Appellant for driving around a barricade. R.R. 30; TEX. TRANSP. CODE § 472.022. Officer Rodriguez testified that had Appellant not been arrested for driving while intoxicated he would have issued her a citation for disregarding a barricade. R.R. 30.

---

[12] Available at: https://www.municode.com/library/tx/austin/codes/transportation_criteria_manual?nodeId=TRCRMA_S8TRCO.

[13] Available at: https://www.municode.com/library/tx/austin/codes/transportation_criteria_manual?nodeId=TRCRMA_S8TRCO.

**1. Appellant did not commit the traffic offense of driving around a barricade because she did not drive "around" the barricade and the "barricade" did not meet the statutory definition of barricade.**

Texas Transportation Code § 472.022 provides that a person commits an offense if the person "drives *around* a barricade." TEX. TRANSP. CODE § 472.022 (emphasis added). It is important to note that the legislature specifically used the word "around" when drafting the statute. Id. The Code Construction Act requires that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE § 311.011; State v. Chacon, 273 S.W.3d 375, 379 (Tex. App.—San Antonio 2008, no pet.) (statutes are to be construed as written). The legislature has not criminalized "passing" a barricade. Criminalizing driving "around" a barricade makes sense; this allows officers to physically block off individual lanes of lanes of travel.[14] Otherwise, anytime a barricade was placed anywhere in the street the entire street would be blocked. In this case Appellant did not drive around any barricades; her lane of travel was clear, unobstructed, and her movement was unimpeded. Officer Rodriguez testified that there were no barricades in Appellant's lane of travel. R.R. 18. Had there been a barricade across both lanes of traffic and Appellant had left the roadway and driven "around" the barricade she would have admittedly violated § 472.022. All Appellant did was "pass" a barricade in the adjoining lane. This is

---

[14] The Texas MUTCD notes that one of the functions of a barricade is to close either "all or a portion" of the roadway. *See* Attachment 2 pg. 9.

11

not a crime. Accordingly, because Appellant did not go "around" any barricade she did not violate § 472.022.

Recall that § 472.022 of the Texas Transportation Code sets out the definition of "barricade" as it pertains to the offense of driving around a barricade. *See* page 8 *supra*. In this case, Officer Rodriguez was positioned at the barricade for the Austin City Limits music festival. C.R. 6. In order for there to be a violation of § 472.022 the barricade must be in place "to prevent the passage of motor vehicles over the road, street, or highway during construction, repair, or dangerous conditions." TEX. TRANSP. CODE § 472.022(e)(1)(B). Austin City Limits is a yearly music festival[15] and the placement of the barricade for this purpose does not fall into the category of "construction, repair, or dangerous condition." Officer Rodriguez also failed to articulate sufficient facts that would indicate the barricade was in place for any of the statutory reasons. Because of this Appellant did not commit the offense of driving around a barricade.

In addition to driving around a barricade, § 472.022 also makes it an offense to: "disobey[] the instructions, signals, warnings, or markings of a warning sign." TEX. TRANSP. CODE § 472.022(a)(1).[16] Like the definition of "barricade" the statute also defines "warning sign" as a sign "on a road, street, or highway during

---

[15] *See* http://www.aclfestival.com/.

[16] *See* also pages 15-17 *infra* regarding sign placement as it pertains to § 544.004 of the Texas Transportation Code.

12

construction, repair, or dangerous conditions." TEX. TRANSP. CODE § 472.022(e)(3). Officer Rodriguez testified to the presence of two signs. R.R. 7. One sign said "northbound was shut down for thru traffic" and the other said "Barton Springs Road to close through Ziker Park Friday 12 a.m. until Monday 3 a.m." R.R. 7. Officer Rodriguez and the State failed to show that the signs were placed there for the purpose of "construction, repair, or dangerous condition." *See* TEX. TRANSP. CODE § 472.022(e)(3). Because of this, the signs do not meet the statutory definition and thus Appellant committed no offense by continuing unimpeded in her lane of travel. There is no evidence regarding the location of the sign that read "northbound shut down for traffic." Additionally the language used in this sign—northbound—is ambiguous at best as it did not specify which road was shut down. Furthermore, neither sign would put a reasonable person on notice that Barton Springs Road was closed.

The sign reading "Barton Springs Road <u>to</u> close through Zilker Park <u>*Friday 12 a.m.*</u> until Monday 3 a.m." (emphasis added) would lead a reasonable person to believe Barton Springs Road was then open. The sign gave notice of what was to happen in the future, *i.e.* "Barton Springs Road <u>to</u> close . . . Friday 12 a.m. . . . .", not that Barton Springs Road <u>is</u> closed until Monday 3 a.m. A reasonable person understands "12 a.m." to be midnight, and when a reasonable person hears "Friday at midnight" it is understood to mean at the end of the day on Friday or late Friday

13

night. Appellant was stopped at about 3:00 a.m. on Friday morning 21 hours before midnight Friday. A reasonable person would understand the sign to mean Barton Springs Road was open Friday and would become closed at the end of the day, *i.e.* midnight, on Friday.

Section 472.022 of the Texas Transportation Code also requires that the barricade or signs be placed by "the department [*i.e.* The Texas Department of Transportation[17]], a political subdivision, or a contractor or subcontractor." TEX. TRANSP. CODE § 472.022(e)(1)(A) & (e)(3). There is no evidence that the signs or barricades closing the road for the Austin City Limits music festival were placed there by any of the entities listed in the statutes. Because of this, in addition to the definition[18] and purpose[19] problems mentioned above, Appellant cannot have legally violated § 472.022 and any detention of her vehicle for this is illegal.

> **2. Appellant did not commit the traffic offense of failing to comply with a traffic-control device because the barricades, Officer Rodriguez, and signage were not in the proper position.**

Though not raised by the State at the hearing on Defendant's motion to suppress evidence, a thorough examination of Officer Rodriguez's detention of Appellant requires an examination of § 544.004 of the Texas Transportation Code.

---

[17] "'Department' means the Texas Department of Transportation." TEX. TRANSP. CODE § 471.004(f)(3).

[18] Appellant did not go "around" any barricades.

[19] The barricade and signs (if any) where not in place for the purpose of construction, repair, or dangerous conditions.

14

Section 544.004 sets out the offense for failing to comply with a traffic-control device. It provides that:

> (a) The operator of a vehicle or streetcar shall comply with an applicable official traffic-control device placed as provided by this subtitle unless the person is:
>   (1) otherwise directed by a traffic or police officer; or
>   (2) operating an authorized emergency vehicle and is subject to exceptions under this subtitle.
> (b) A provision of this subtitle requiring an official traffic-control device may not be enforced against an alleged violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible to an ordinarily observant person. A provision of this subtitle that does not require an official traffic-control device is effective regardless of whether a device is in place.

TEX. TRANSP. CODE § 544.004. Recall from section III above (pages 7-10) that section 544.001 requires that the Texas Transportation Commission adopt a manual for uniform traffic control devices. *See* TEX. TRANSP. CODE § 544.001. Attachment 2 contains the relevant portions of the Texas MUTCD concerning the use and placement of barricades and road closure signs. Reading §§ 544.004, 544.001, and the Texas MUTCD together, it is clear that the position of the barricades, lack of proper signs, and the position of Officer Rodriguez's vehicle behind the barricade negate any reasonable suspicion that Appellant failed to comply with a traffic control device.

Section 544.004(b) requires that the traffic control device be in a "proper position and sufficiently legible to an ordinarily observant person." TEX. TRANSP.

15

CODE § 544.004(b). In this case the barricades blocked all but one lane of travel. R.R. 9, 18, State's Exhibit 1. The Texas MUTCD and the Austin Transportation Criteria Manual[20] note that barricades may be used to close an entire roadway or just a single lane. *See* Attachment 2, pg. 4. An ordinarily observant person in the same position as Appellant would reasonably conclude that the lanes physically blocked with a barricade were closed and the lane of travel without a barricade was open. Officer Rodriguez's car was not parked in the right lane nor were his overhead flashing lights on. He was not standing outside of his car attempting to direct traffic or notifying drivers in any way that the road was closed. There simply was nothing about this scenario that would cause a reasonable person to believe the right lane was closed. In fact, the scenario is one drivers commonly encounter, especially in Austin, with constant construction downtown—a barricade blocking one lane with an officer sitting in his car in the closed off-lane, forcing drivers to move into and drive in the open lane.

One of the functions that barricades also serve is to act as channelizing devices. *See* Attachment 2, pg 8. Because Officer Rodriguez's vehicle was positioned behind the barricade instead of in the one free lane of travel the barricades had the effect of channeling Appellant to the open right lane. Officer Rodriguez's backup officer took Officer Rodriguez's initial position near the

---

[20] Available at: https://www.municode.com/library/tx/austin/codes/transportation_criteria_manual?nodeId=TRCRMA_S8TRCO.

16

barricade when Officer Rodriguez left his position to stop Appellant. R.R. 25. Unlike Officer Rodriguez, the backup officer used his vehicle to block the open lane of travel. *See* State's Exhibit 1; R.R. 18-19. Had Officer Rodriguez positioned his vehicle correctly (like his backup officer) Appellant would have noticed that her lane of travel was physically blocked.

It is clear from the testimony of Officer Rodriguez that the intent of the barricades and signs was to create a traffic control point for the Austin City Limits music festival.[21] The Texas MUTCD sets out how barricades and signs should be used to create a traffic control point. Attachment 2, pg. 6. The Texas MUTCD requires that a specific traffic control point sign[22] be present where the traffic control point has been set up to "impose such controls as are necessary to limit congestion, expedite emergency traffic, exclude unauthorized vehicles, or protect the public." Texas MUTCD p 366 § 2N.05, 2011 ed., revision 2 (Attachment 2, pg. 6). Furthermore, the manual requires that the sign be installed "*at the point where traffic must stop to be checked*." Id (emphasis added). Where a road is completely closed the manual requires that:

> The ROAD (STREET) CLOSED sign shall not be used where road user flow is maintained through the [TEMPORARY TRAFFIC CONTROL] zone

---

[21] Other vehicles were clearly traveling on Barton Springs Road past the point of the barricade and are visible in State's Exhibit 2. *See also* R.R. 25-26. Officer Rodriguez indicated that his backup officer was allowing vehicles through the barricade if they had the correct credentials. Id.

[22] The manual refers to the sign as EM-3 and an example may be found at page 5 of Attachment 4.

17

with a reduced number of lanes on the existing roadway or where the actual closure is some distance beyond the sign.

Texas MUTCD p 607 § 2N.05, 2011 ed., revision 2 (Attachment 2, pg. 7). To put it another way, where a road is going to be temporarily closed, there must be a sign at the point where the road is closed; this is especially true if some traffic will be allowed through the closure.

Recall that in Appellant's case the intent of the barricade was to allow people affiliated with the Austin City Limits music festival to pass through the checkpoint. It was essentially a temporary traffic control zone contemplated by the Texas MUTCD. There was no evidence that there was a road closed sign at the barricades as required by the Texas MUTCD. Officer Rodriguez testified that there was a large sign behind his position that read "Barton Springs Road to be closed through Zilker Park Friday 12 a.m. until Monday 3 a.m." R.R. 22, 23.[23] This sign is past the point of the barricade and the use of the words "to be closed" and "Friday 12 a.m." leads a reasonable person to believe that it is referencing a future time. Officer Rodriguez also testified to the presence of a second mobile sign that read "northbound was shut down for through traffic." R.R. 7. The location of the second sign is unclear from the record and it is unclear what "northbound" referred to. There is nothing in the record to indicate whether the sign was in a position where

---

[23] The support pole for the sign is barely visible in Officer Rodriguez's in-car video. *See* State's Exhibit 1 (the pole is visible between the two orange signs the time stamp of 2:59:54).

Appellant or a reasonable person would have seen it. Officer Rodriguez's testimony indicates that the second sign was a mobile sign that could be towed by a truck. R.R. 7. This is not the road closed sign that is contemplated by the Texas MUTCD. *See* Attachment 2, pg. 5-6 (referencing a traffic control point sign).

Additionally, based on Officer Rodriguez's testimony, the sign does not say the road is completely closed, just closed to through traffic. Assuming the second sign that said the road was closed to through traffic was in a location visible to Appellant prior to the barricade, Officer Rodriguez still did not know whether Appellant was going through the park or whether her destination was somewhere within the park. If the road was truly blocked for through traffic then the situation is analogous to Appellant driving on a dead end street. Once she reached the end she would then simply turn her vehicle around and come back the way she came. There is nothing illegal about turning down a dead-end street.

The transportation code specifically provides that the failure to obey a traffic control device is only a crime if the device is sufficiently legible to the driver. TEX. TRANSP. CODE § 544.004. The purpose of the Texas MUTCD is to ensure that drivers understand traffic control devices.[24] If the device does not comply with the Texas MUTCD then it cannot be inferred that the driver understood the device. Thus, it cannot be said that Appellant failed to comply with a traffic control device.

---

[24] This is why the creation of the Texas MUTDC is codified in the same chapter as the offense of failure to comply with a traffic-control device. *See* TEX. TRANSP. CODE §§544.001 et. seq.

Accordingly, Officer Rodriquez's detention of Appellant for failure to comply with a traffic control device is illegal.

## V. CONCLUSION

There was no reasonable suspicion to believe Appellant committed any crime prior to her stop. She did not fail to obey any traffic control device, nor did she drive around any barricade.[25] Her lane of travel was wide open. There was no barricade or police car blocking her lane. The officer's car was parked in the adjoining lane without flashing lights, and the officer was not positioned outside his car making any effort to direct or stop traffic. Because Officer Rodriguez did not properly block the right lane of travel, Appellant, as any reasonable person would, felt free to continue in the right lane of travel. The sign did not say Barton Springs Road <u>was</u> closed; it said it was <u>to be closed</u> beginning Friday at 12:00 a.m. which a reasonable person would understand to mean Friday at midnight, a time not to occur until 21 hours later. The barricades, signage, and Officer Rodriquez's position would lead an ordinary person to believe the right lane of travel was still open. Since Appellant did not commit a traffic offense the detention of her vehicle was illegal and any evidence gathered as a result of her detention should be suppressed.

---

[25] Furthermore, the offense of driving around a barricade requires that the barricade be in place for certain statutory reasons, none of which were applicable in this case.

## PRAYER

For the reasons set out above, Appellant respectfully prays this Court overrule the trial court's ruling and order that Appellant's motion to suppress be granted.

Respectfully submitted,

_____
MERIL "GENE" ANTHES, JR.
State Bar No. 24040125
CHRISTOPHER M. GUNTER
State Bar No. 08624600
GUNTER, BENNETT & ANTHES, P.C.
600 West Ninth Street
Austin, Texas 78701-2212
(512) 476-2494
(512) 476-2497 Facsimile
Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that this document was prepared with Microsoft Word, and that, according to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i) contain 4,294 words.

_____
MERIL "GENE" ANTHES, JR.
CHRISTOPHER M. GUNTER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Brief sent via certified mail to PO Box 1748, Austin, Texas 78767 to Giselle Horton, Assistant County Attorney, Travis County, P.O. Box 1748, Austin, Texas 78767, on this the 10th day of June, 2015.

_____
MERIL "GENE" ANTHES, JR.
CHRISTOPHER M. GUNTER

# Attachment 1



*Elizabeth Ann Black v. State*
*Attachment 1*
*Page 2 of 2*

# Attachment 2



*Elizabeth Ann Black v. State*
*Attachment 2*
*Page 2 of 9*

## CHAPTER 2B. REGULATORY SIGNS, BARRICADES, AND GATES

### Section 2B.01 Application of Regulatory Signs

*Standard:*

Regulatory signs shall be used to inform road users of selected traffic laws or regulations and indicate the applicability of the legal requirements.

Regulatory signs shall be installed at or near where the regulations apply. The signs shall clearly indicate the requirements imposed by the regulations and shall be designed and installed to provide adequate visibility and legibility in order to obtain compliance.

Regulatory signs shall be retroreflective or illuminated (see Section 2A.07) to show the same shape and similar color by both day and night, unless specifically stated otherwise in the text discussion in this Manual for a particular sign or group of signs.

The requirements for sign illumination shall not be considered to be satisfied by street or highway lighting.

*Support:*

Section 1A.09 contains information regarding the assistance that is available to jurisdictions that do not have engineers on their staffs who are trained and/or experienced in traffic control devices.

### Section 2B.02 Design of Regulatory Signs

*Standard:*

Regulatory signs shall be rectangular unless specifically designated otherwise. Regulatory signs shall be designed in accordance with the sizes, shapes, colors, and legends contained in the "Standard Highway Sign Designs for Texas" book (see Section 1A.11).

*Option:*

Regulatory word message signs other than those classified and specified in this Manual and the "Standard Highways Sign Designs for Texas" book (see Section 1A.11) may be developed to aid the enforcement of other laws or regulations.

Except for symbols on regulatory signs, minor modifications may be made to the design provided that the essential appearance characteristics are met.

*Support:*

The use of educational plaques to supplement symbol signs is described in Section 2A.12.

*Guidance:*

Changeable message signs displaying a regulatory message incorporating a prohibitory message that includes a red circle and slash on a static sign should display a red symbol that approximates the same red circle and slash as closely as possible.

### Section 2B.03 Size of Regulatory Signs

*Standard:*

Except as provided in Section 2A.11, the sizes for regulatory signs shall be as shown in Table 2B-1.

*Support:*

Section 2A.11 contains information regarding the applicability of the various columns in Table 2B-1.

*Standard:*

Except as provided in Paragraphs 4 and 5, the minimum sizes for regulatory signs facing traffic on multi-lane conventional roads shall be as shown in the Multi-lane column of Table 2B-1.

*Option:*

Where the posted speed limit is 35 mph or less on a multi-lane highway or street, other than for a STOP sign, the minimum size shown in the Single Lane column in Table 2B-1 may be used.

Where a regulatory sign, other than a STOP sign, is placed on the left-hand side of a multi-lane roadway in addition to the installation of the same regulatory sign on the right-hand side or the roadway, the size shown in the Single Lane column in Table 2B-1 may be used for both the sign on the right-hand side and the sign on the left-hand side of the roadway.

*Standard:*

A minimum size of 36 x 36 inches shall be used for STOP signs that face multi-lane approaches.

*Elizabeth Ann Black v. State*
*Attachment 2*
*Page 3 of 9*

## Section 2B.66 Seat Belt Symbol and Sign (R19-8T)

**Standard:**

When a seat belt symbol is used, the symbol shown in Figure 2B-32 shall be used.

*Guidance:*

*The seat belt symbol should not be used alone. If used, the seat belt symbol should be incorporated into regulatory sign messages for mandatory seat belt use.*

Option:

The FASTEN SAFETY BELTS (R19-8T) sign may be installed at freeway entry points and at other selected high visibility areas.

## Section 2B.67 Barricades

Option:

Barricades may be used to mark any of the following conditions:
   A. A roadway ends,
   B. A ramp or lane closed for operational purposes, or
   C. The permanent or semi-permanent closure or termination of a roadway.

**Standard:**

When used to warn and alert road users of the terminus of a roadway in other than temporary traffic control zones, barricades shall meet the design criteria of Section 6F.68 for a Type 3 Barricade, except that the colors of the stripes shall be retroreflective white and retroreflective red.

Option:

An end-of-roadway marker or markers may be used as described in Section 2C.66.

*Guidance:*

*Appropriate advance warning signs (see Chapter 2C) should be used.*

## Section 2B.68 Gates

Support:

Gates described in this section used for weather or other emergency conditions are typically permanently installed to enable the gate to be immediately deployed as needed to prohibit the entry of traffic to the highway segment(s).

A gate typically features a gate arm that is moved from a vertical to a horizontal position or is rotated in a horizontal plane from parallel to traffic to perpendicular to traffic. Traffic is obstructed and required to stop when the gate arm is placed in a horizontal position perpendicular to traffic. Another type of gate consists of a segment of fence (usually on rollers) that swings open and closed, or that is retracted to open and then extended to close.

Gates are sometimes used to enforce a required stop. Some examples of such uses are the following:
   A. Parking facility entrances and exits,
   B. Private community entrances and exits,
   C. Military base entrances and exits,
   D. Toll plaza lanes,
   E. Movable bridges (see Chapter 4J),
   F. Automated Flagger Assistance Devices (see Chapter 6E), and
   G. Grade crossings (see Part 8).

Gates are sometimes used to periodically close a roadway or a ramp. Some examples of such uses are the following:
   A. Closing ramps to implement counter-flow operations for evacuations,
   B. Closing ramps that lead to reversible lanes, and
   C. Closing roadways for weather events such as snow, ice, or flooding, or for other emergencies.

**Standard:**

Except as provided in Paragraph 6, gate arms, if used, shall be fully retroreflectorized on both sides, have vertical stripes alternately red and white at 16-inch intervals measured horizontally as shown in Figure 8C-1.

Option:

If used on a one-way roadway or ramp, the retroreflectorization may be omitted on the side of the gate facing away from approaching traffic.

*Elizabeth Ann Black v. State*
*Attachment 2*
*Page 4 of 9*

## Table 2N-1. Emergency Management Sign Sizes

| Sign or Plaque | Sign Designation | Section | Minimum Size |
|---|---|---|---|
| Evacuation Route | EM-1, EM-1aT | 2N.03 | 24 x 24 |
| Area Closed | EM-2 | 2N.04 | 30 x 24 |
| Traffic Control Point | EM-3 | 2N.05 | 30 x 24 |
| Maintain Top Safe Speed | EM-4 | 2N.06 | 24 x 30 |
| Permit Required | EM-5 | 2N.07 | 24 x 30 |
| Emergency Aid Center | EM-6a to EM-6d | 2N.08 | 30 x 24 |
| Shelter Directional | EM-7a to EM-7d | 2N.09 | 30 x 24 |

Notes: 1. Larger signs may be used when appropriate
2. Dimensions in inches are shown as width x height

## Figure 2N-1. Emergency Management Signs



* HURRICANE is an example of one type of evacuation route. Legends for other types may also be used, or this line of text may be omitted.

*Elizabeth Ann Black v. State*
*Attachment 2*
*Page 5 of 9*

An approved Emergency Management symbol with a diameter of 3.5 inches may appear near the bottom of an Evacuation Route sign.

**Standard:**

The arrow designs, if used, on the EM-1 sign shall include a straight, vertical arrow pointing upward, a straight horizontal arrow pointing to the left or right, or a bent arrow pointing to the left or right for advance warning of a turn.

If used, the Evacuation Route sign, with the appropriate arrow, shall be installed 150 to 300 feet in advance of, and at, any turn in an approved evacuation route. The sign shall also be installed elsewhere for straight-ahead confirmation where needed.

If used in urban areas, the Evacuation Route sign shall be mounted at the right-hand side of the roadway, not less than 7 feet above the top of the curb, and at least 1 foot back from the face of the curb. If used in rural areas, the Evacuation Route sign shall be mounted at the right-hand side of the roadway, not less than 7 feet above the pavement and not less than 6 feet or more than 10 feet to the right of the right-hand roadway edge.

Evacuation Route signs shall not be placed where they will conflict with other signs. Where conflict in placement would occur between the Evacuation Route sign and a standard regulatory sign, the regulatory sign shall take precedence.

**Option:**

In case of conflict with guide or warning signs, the Evacuation Route sign may take precedence.

*Guidance:*

*Placement of Evacuation Route signs should be made under the supervision of the officials having jurisdiction over the placement of other traffic signs. Coordination with Emergency Management authorities and agreement between contiguous political entities should occur to assure continuity of routes.*

## Section 2N.04  AREA CLOSED Sign (EM-2)

**Standard:**

The AREA CLOSED (EM-2) sign (see Figure 2N-1) shall be used to close a roadway in order to prohibit traffic from entering the area. It shall be installed on the shoulder as near as practical to the right-hand edge of the roadway, or preferably, on a portable mounting or barricade partly or entirely in the roadway.

*Guidance:*

*For best visibility, particularly at night, the sign height should not exceed 4 feet measured vertically from the pavement to the bottom of the sign. Unless adequate advance warning signs are used, it should not be placed to create a complete and unavoidable blocked route. Where feasible, the sign should be located at an intersection that provides a detour route.*

## Section 2N.05  TRAFFIC CONTROL POINT Sign (EM-3)

**Standard:**

The TRAFFIC CONTROL POINT (EM-3) sign (see Figure 2N-1) shall be used to designate a location where an official traffic control point has been set up to impose such controls as are necessary to limit congestion, expedite emergency traffic, exclude unauthorized vehicles, or protect the public.

The sign shall be installed in the same manner as the AREA CLOSED sign (see Section 2N.04), and at the point where traffic must stop to be checked.

The standard STOP (R1-1) sign shall be used in conjunction with the TRAFFIC CONTROL POINT sign. The TRAFFIC CONTROL POINT sign shall consist of a black legend and border on a retroreflectorized white background.

*Guidance:*

*The TRAFFIC CONTROL POINT sign should be mounted directly below the STOP sign.*

## Section 2N.06  MAINTAIN TOP SAFE SPEED Sign (EM-4)

**Option:**

The MAINTAIN TOP SAFE SPEED (EM-4) sign (see Figure 2N-1) may be used on highways where conditions are such that it is prudent to evacuate or traverse an area as quickly as possible.

Where an existing Speed Limit (R2-1) sign is in a suitable location, the MAINTAIN TOP SAFE SPEED sign may conveniently be mounted directly over the face of the speed limit sign that it supersedes.

*Elizabeth Ann Black v. State*
*Attachment 2*
*Page 6 of 9*

signs. This change shall be made in compliance with applicable ordinances or statutes of the jurisdiction as well as the "Standard Highway Sign Designs for Texas."

## Section 6F.08 ROAD (STREET) CLOSED Sign (R11-2)

*Guidance:*

The ROAD (STREET) CLOSED (R11-2) sign (see Figure 6F-3) should be used when the roadway is closed to all road users except contractors' equipment or officially authorized vehicles. The R11-2 sign should be accompanied by appropriate warning and detour signing.

*Option:*

The words BRIDGE OUT (or BRIDGE CLOSED) may be substituted for ROAD (STREET) CLOSED where applicable.

*Guidance:*

The ROAD (STREET) CLOSED sign should be installed at or near the center of the roadway on or above a Type 3 Barricade that closes the roadway (see Section 6F.68).

*Standard:*

The ROAD (STREET) CLOSED sign shall not be used where road user flow is maintained through the TTC zone with a reduced number of lanes on the existing roadway or where the actual closure is some distance beyond the sign.

## Section 6F.09 Local Traffic Only Signs (R11-3a, R11-4)

*Guidance:*

The Local Traffic Only signs (see Figure 6F-3) should be used where road user flow detours to avoid a closure some distance beyond the sign, but where local road users can use the roadway to the point of closure. These signs should be accompanied by appropriate warning and detour signing.

In rural applications, the Local Traffic Only sign should have the legend ROAD CLOSED XX MILES AHEAD, LOCAL TRAFFIC ONLY (R11-3a).

*Option:*

In urban areas, the legend ROAD (STREET) CLOSED TO THRU TRAFFIC (R11-4) or ROAD CLOSED, LOCAL TRAFFIC ONLY may be used.

In urban areas, a word message that includes the name of an intersecting street name or well-known destination may be substituted for the words XX MILES AHEAD on the R11-3a sign where applicable.

The words BRIDGE OUT (or BRIDGE CLOSED) may be substituted for the words ROAD (STREET) CLOSED on the R11-3a or R11-4 sign where applicable.

## Section 6F.10 Weight Limit Signs (R12-1, R12-2)

*Standard:*

A Weight Limit sign (see Figure 6F-3), which shows the gross weight or axle weight that is permitted on the roadway or bridge, shall be consistent with State or local regulations and shall not be installed without the approval of the authority having jurisdiction over the highway.

When weight restrictions are imposed because of the activity in a TTC zone, a marked detour shall be provided for vehicles weighing more than the posted limit.

## Section 6F.11 STAY IN LANE Sign (R4-9)

*Option:*

A STAY IN LANE (R4-9) sign (see Figure 6F-3) may be used where a multi-lane shift has been incorporated as part of the TTC on a highway to direct road users around road work that occupies part of the roadway on a multi-lane highway.

## Section 6F.12 Work Zone Plaque (G20-5aP), TRAFFIC FINES DOUBLE Sign (R20-5T) and WHEN WORKERS ARE PRESENT Plaque (R20-5aTP)

**Standard:**

The Traffic Fines Double Sign Assembly shall consist of the WORK ZONE plaque (G20-5aP), the TRAFFIC FINES DOUBLE sign (R20-5T) and the WHEN WORKERS ARE PRESENT plaque (R20-5aTP) (see Figure 6F-3). The Traffic Fines Double Sign Assembly shall be placed as an integral part of the advance warning signs along major roadway approaches for long term

Option:

A portable changeable message sign may be used to simulate an arrow board display.

## Section 6F.62 High-Level Warning Devices (Flag Trees)

Option:

A high-level warning device (flag tree) may supplement other TTC devices in TTC zones.

Support:

A high-level warning device is designed to be seen over the top of typical passenger cars. A typical high-level warning device is shown in Figure 6F-2.

Standard:

**A high-level warning device shall consist of a minimum of two flags with or without a Type B high-intensity flashing warning light. The distance from the roadway to the bottom of the lens of the light and to the lowest point of the flag material shall be not less than 8 feet. The flag shall be 16 inches square or larger and shall be orange or fluorescent red-orange in color.**

Option:

An appropriate warning sign may be mounted below the flags.

Support:

High-level warning devices are most commonly used in high-density road user situations to warn road users of short-term operations.

## Section 6F.63 Channelizing Devices

Standard:

**Designs of various channelizing devices shall be as shown in Figure 6F–7. All channelizing devices shall be crashworthy.**

Support:

The function of channelizing devices is to warn road users of conditions created by work activities in or near the roadway and to guide road users. Channelizing devices include cones, tubular markers, vertical panels, drums, barricades, and longitudinal channelizing devices.

Channelizing devices provide for smooth and gradual vehicular traffic flow from one lane to another, onto a bypass or detour, or into a narrower traveled way. They are also used to channelize vehicular traffic away from the work space, pavement drop-offs, pedestrian or shared-use paths, or opposing directions of vehicular traffic.

Standard:

**Devices used to channelize pedestrians shall be detectable to users of long canes and visible to persons having low vision.**

**Where channelizing devices are used to channelize pedestrians, there shall be continuous detectable bottom and top surfaces to be detectable to users of long canes. The bottom of the bottom surface shall be no higher than 2 inches above the ground. The top of the top surface shall be no lower than 32 inches above the ground.**

Option:

A gap not exceeding 2 inches between the bottom rail and the ground surface may be used to facilitate drainage.

Guidance:

*Where multiple channelizing devices are aligned to form a continuous pedestrian channelizer, connection points should be smooth to optimize long-cane and hand trailing.*

*The spacing between cones, tubular markers, vertical panels, drums, and barricades should not exceed a distance in feet equal to 1.0 times the speed limit in mph when used for taper channelization, and a distance in feet equal to 2.0 times the speed limit in mph when used for tangent channelization.*

*When channelizing devices have the potential of leading vehicular traffic out of the intended vehicular traffic space as shown in Figure 6H-39, the channelizing devices should be extended a distance in feet of 2.0 times the speed limit in mph beyond the downstream end of the transition area.*

Option:

Warning lights (see Section 6F.83) may be added to channelizing devices in areas with frequent fog, snow, or severe roadway curvature, or where visual distractions are present.

## Figure 6F-7.  Channelizing Devices
### (Sheet 2 of 2)



TYPE 1 BARRICADE ★★★          TYPE 2 BARRICADE ★★★          DIRECTION INDICATOR BARRICADE ★★★

TYPE 3 BARRICADE ★★★

★★★ Rail stripe widths shall be 6 inches, except that 4-inch wide stripes may be used if rail lengths are less than 36 inches. The sides of barricades facing traffic shall have retroreflective rail faces.

a TTC zone in order to accommodate changing conditions, but are generally used in situations where they will remain in place for a prolonged period of time.

Option:

Although drums are most commonly used to channelize or delineate road user flow, they may also be used alone or in groups to mark specific locations.

Guidance:

*Drums should not be weighted with sand, water, or any material to the extent that would make them hazardous to road users or workers when struck.  Drums used in regions susceptible to freezing should have drain holes in the bottom so that water will not accumulate and freeze causing a hazard if struck by a road user.*

Standard:

**Ballast shall not be placed on the top of a drum.**

## Section 6F.68  Type 1, 2, or 3 Barricades

Support:

A barricade is a portable or fixed device having from one to three rails with appropriate markings and is used to control road users by closing, restricting, or delineating all or a portion of the right-of-way.

As shown in Figure 6F-7, barricades are classified as Type 1, Type 2, or Type 3.

Standard:

**Stripes on barricade rails shall be alternating orange and white retroreflective stripes sloping downward at an angle of 45 degrees in the direction road users are to pass.  Except as provided in Paragraph 4, the stripes shall be 6 inches wide.**

Option:

When rail lengths are less than 36 inches, 4-inch wide stripes may be used.

*Elizabeth Ann Black v. State*
*Attachment 2*
*Page 9 of 9*



**GUNTER, BENNETT & ANTHES**

ATTORNEYS AT LAW

600 WEST NINTH STREET
AUSTIN, TEXAS 78701

Christopher M. Gunter*
Alan Bennett
Meril "Gene" Anthes, Jr.
_____
* Board Certified - Criminal Law
   Texas Board of Legal Specialization

Telephone:
Office: (512) 476-2494
Fax: (512) 476-2497

June 12, 2015

Honorable Jeffrey D. Kyle                          *Via Electronic Delivery*
Clerk of the Court
Austin Court of Appeals
Price Daniel Sr. Building
209 West 14th Street, Room 101
Austin, Texas 78701

> RE:   The State of Texas
>        vs.
>        Elizabeth Black
>        No. 03-15-00065-CR
>        On Appeal from Travis County
>        Court-at-law Number Five
>        Cause No. C1CR-13-217530

Dear Mr. Kyle:

Enclosed for filing please find Appellant's Brief in the above-referenced cause.

Thank you for your assistance in this matter. Please feel free to contact me should you have any questions.

Best regards,

Gene Anthes

cc:   *Giselle Horton*
      *Assistant Travis County Attorney*
      *P.O. Box 1748*
      *Austin, Texas 78767*