# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50745

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARCO ANTONIO ALVARADO-ZARZA, also known as Marco Antonio Alvarado Zarza,

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Texas

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Marco Antonio Alvarado-Zarza appeals the district court's denial of his motion to suppress the evidence of cocaine found during a stop for a traffic violation premised on his failure to signal properly before turning. We REVERSE the judgment of conviction and REMAND for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

In February 2011, Texas Highway Patrol Officer Juan Barrientos stopped Alvarado-Zarza near the U.S.-Mexico border for purportedly violating a Texas law requiring drivers to signal 100 feet in advance of a turn. *See* TEX.

No. 13-50745

TRANSP. CODE ANN. § 545.104(b).  Officer Barrientos briefly questioned Alvarado-Zarza and then obtained consent to search his vehicle.  After discovering cocaine, Officer Barrientos placed Alvarado-Zarza under arrest. Before receiving warnings about his constitutional rights, Alvarado-Zarza directed Officer Barrientos to additional cocaine in his vehicle.

Alvarado-Zarza was charged with possession with intent to distribute cocaine.  He moved to suppress the evidence of the cocaine, arguing that the traffic stop was illegal and that all evidence obtained was inadmissible.  At a suppression hearing, while a dash-camera video played, Officer Barrientos explained the events of the stop.  He believed that Alvarado-Zarza violated Texas law by failing to signal 100 feet before turning.  He also claimed that the "turn" occurred when Alvarado-Zarza moved into the left-turn lane from a through-lane, not when he actually turned left.

Alvarado-Zarza argued that the 100-foot requirement did not apply to lane changes.  He called James McKay, a private investigator and former policeman, as an expert witness.  Using the dash-camera video, McKay determined that Alvarado-Zarza was adjacent to a crosswalk sign when he activated his turn signal.  McKay went to the scene and measured the distances from that sign to the point where Alvarado-Zarza moved into the left-turn lane and then to the point where he turned left.  He testified that those distances were approximately 200 and 300 feet, respectively.  Based on this testimony, Alvarado-Zarza argued that Officer Barrientos could not reasonably have suspected that he failed to meet the 100-foot requirement, even if the requirement was construed to apply to lane changes.

The district court denied the motion.  It noted that Alvarado-Zarza had changed lanes only to effectuate a turn.  It concluded, therefore, that the lane change and subsequent turn constituted "one prolonged turn."  It also found

2

that Alvarado-Zarza's expert witness lacked credibility because he could not answer certain questions relating to "physical observations such as the rate of speed of both vehicles and what distorting effect, if any, would the video recording have, i.e. depth perception . . . ." Finally, the court found that even if Alvarado-Zarza signaled more than 100 feet before turning, Officer Barrientos reasonably suspected that he had not done so.

Following the denial of his motion to suppress, Alvarado-Zarza entered a conditional guilty plea in which he reserved the right to appeal the district court's determination regarding the legality of his traffic stop.[1]

## DISCUSSION

"In evaluating a district court's denial of a defendant's motion to suppress, we review factual findings, including credibility determinations, for clear error, and we review legal conclusions *de novo*." *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010) (citation omitted). We view "the evidence in the light most favorable to the Government as the prevailing party." *Id.* at 269 (citation omitted).

Evidence derived from an unreasonable search or seizure generally must be suppressed under the fruit-of-the-poisonous-tree doctrine.[2] *See United*

---

[1] The government argues that Alvarado-Zarza only preserved review of the "basis" for the traffic stop. While it is true that the plea agreement reserved Alvarado-Zarza's right to appeal "the sufficiency of [the] basis [of the] stop," the next paragraph more broadly preserved issues "relative to the district court's ruling on Defendant's Motion to Suppress." Because we must interpret appeal waivers narrowly against the government, the broader reading controls. *See United States v. Cooley*, 590 F.3d 293, 296 (5th Cir. 2009).

[2] One exception is when an arrestee consents to the search and that consent is: (1) "voluntarily given" and (2) "an independent act of free will." *United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993). The same standard applies to an arrestee's admissions. *See United States v. Tovar*, 719 F.3d 376, 387-88 (5th Cir. 2013). Here, we decline to analyze the validity of Alvarado-Zarza's consent to the search of his vehicle or his post-arrest statements. First, the district court did not address the "free will" element, and

*States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013). Warrantless seizures are "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception comes from *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* Under *Terry,* police officers may stop and briefly detain an individual if they reasonably suspect that criminal activity is occurring or about to occur. *Id.* Reasonable suspicion must be "particularized," *United States v. Cortez,* 449 U.S. 411, 417-18 (1981), meaning that "the police officer must be able to point to specific and articulable facts" justifying the stop, *Terry*, 392 U.S. at 21. Additionally, reasonable suspicion cannot rest upon a mistake of law or fact unless the mistake is objectively reasonable. *See Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (mistake of law); *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) (mistake of fact).

We examine whether reasonable suspicion existed to stop Alvarado-Zarza, and particularly whether the arresting officer committed unreasonable mistakes of law and fact.

### I.    *Arresting Officer's Mistake of Law*

In Texas, "[a]n operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b). As we explain

---

the government has not done so on appeal. Accordingly, the government has waived the argument. *See United States v. Macias*, 658 F.3d 509, 523 (5th Cir. 2011); *see also Burnley v. City of San Antonio*, 470 F.3d 189, 200 & n.10 (5th Cir. 2006) (applying waiver doctrine to appellee). Second, the government conceded at oral argument that, if the stop is deemed illegal, the evidence must be suppressed. *See, e.g.*, *United States v. Banks*, 624 F.3d 261, 263 & n.1 (5th Cir. 2010) (declining to address issue conceded at oral argument).

No. 13-50745

below, this requirement applies only to turns, not to lane changes. Officer Barrientos did not interpret the statute that narrowly, and his mistaken interpretation was not objectively reasonable.

The Supreme Court recently discussed the effect of a mistake of law committed by a police officer who stopped a car for having only one working brake light; the officer did not realize that state law required only one working brake light. *See Heien,* 135 S. Ct. at 535. The Court determined that the mistake was reasonable based on two considerations. First, the statute contained at least some ambiguity because it referenced "rear lamps" multiple times. *Id.* at 540. Second, the state's appellate courts had not previously addressed the issue. *Id.*

As to this Texas statute, the *Heien* analysis compels the opposite conclusion. First, Section 545.104(b) is unambiguous. Its 100-foot requirement only applies to turns; lane changes are not mentioned. *See* TEX. TRANSP. CODE ANN. § 545.104(b). Furthermore, the statute elsewhere refers to turns and lane changes separately, thereby setting out a distinction between the two. *See* § 545.104(a). This distinction is further indicated by the Texas Driver's Handbook, which defines a lane change as a "lateral maneuver moving the vehicle from one lane to another" and a turn as a "vehicle maneuver to change direction to the left or right." *See Mahaffey v. State*, 316 S.W.3d 633, 641 (Tex. Crim. App. 2010) (citations and quotations omitted). The former definition confirms that a lane change, as its name implies, occurs when moving from one lane to another. A "turn," on the other hand, involves a change to a vehicle's direction. The terms "turn" and "lane change," therefore, signify distinct actions. Thus, Section 545.104(b), by its plain terms, does not apply to lane changes.

Second, seven months prior to Alvarado-Zarza's stop, the Texas Court of Criminal Appeals in *Mahaffey* addressed the distinction between a turn and a lane change.  In that case, a policeman mistakenly concluded that a driver was "turning" by moving out of a lane that was ending.  *See id.* at 635-40.  Although the court did not discuss Section 545.104(b)'s 100-foot requirement, it drew a clear distinction between a turn and other movements, including a lane change.  *See id.* at 640-41 & nn.35, 43 & 46. The court deemed this distinction "plain[] and unambiguous."  *Id.* at 638.  We interpret *Mahaffey* to be a rejection of Officer Barrientos' view.

Because the caselaw far predates the stop in this case, and because the statute facially gives no support to Officer Barrientos' interpretation of the 100-foot requirement, we conclude that his mistake of law was not objectively reasonable.

## II.     *Officer Barrientos' Mistake of Fact*

The remaining question is whether Officer Barrientos possessed a reasonable suspicion that Alvarado-Zarza failed to activate his turn signal 100 feet prior to making a turn.  McKay, Alvarado-Zarza's expert witness, testified that Alvarado-Zarza activated his signal approximately 200 feet before changing lanes and 300 feet before turning.  The court found that this testimony lacked credibility because McKay could not answer certain questions relating to the speed of the vehicles and the effects the video recording would have on a viewer's depth perception.

McKay based his testimony on physical measurements of the distance between the crosswalk sign where Alvarado-Zarza activated his turn signal and the spot where he ultimately turned.  It is unclear whether the district court's findings were intended to indicate that McKay incorrectly determined

No. 13-50745

the points at which Alvarado-Zarza activated his turn signal or turned, erred in measuring the distance between those points, or both.  The video, though, plainly supported McKay's conclusions regarding the points at which Alvarado-Zarza activated his turn signal and later turned.  The government has not challenged the accuracy of the measurement of the distance between those locations.  As McKay noted, the factors identified by the court were irrelevant to his distance calculations.  Those calculations only required him to measure the distance from one point to another; the speed of the cars did not matter.  Additionally, no distortions appear on the video.  As a result, the district court clearly erred in determining that McKay's testimony lacked credibility.

The final question is whether it was objectively reasonable for Officer Barrientos to conclude that Alvarado-Zarza failed to signal 100 feet prior to turning when he in fact signaled 300 feet prior to turning.  *See Rodriguez*, 497 U.S. at 185.  We have not previously addressed questions about the reasonableness of errors in estimating distances.  Other courts have held that the government failed to demonstrate reasonable suspicion when the actual distance between the signal and the turn was unknown and the only evidence that the turn occurred less than 100 feet after the activation of the signal was the officer's conclusory statements.  *See United States v. Gipson*, No. 3:12-CR-393-K, 2013 WL 6027908, at *3 (N.D. Tex. Nov. 14, 2013); *State v. Hneidy*, No. 04-12-00692-CR, 2013 WL 3279743, at *4 (Tex. App.—San Antonio June 26, 2013 pet. denied); *cf. Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).  The conclusion in those cases comports with the requirement that reasonable suspicion be supported by "specific and articulable facts."  *See Terry*, 392 U.S. at 21; *see also Cortez*, 449 U.S. at 417-18.

7

In this case, Officer Barrientos conceded that he acted quickly and could not "really be measuring" the exact signaling distance. Because of his mistaken assumption about the application of the 100-foot requirement, his estimations of distance related to the point where Alvarado-Zarza changed lanes rather than the point where he turned. Taken as a whole, Officer Barrientos' testimony did not provide the sort of specific, articulable facts which would allow a court to determine that he possessed a reasonable suspicion that Alvarado-Zarza had committed a traffic violation. The fact that the actual distance between the signal and the turn was approximately 300 feet, and that Officer Barrientos provided no explanation as to why he might have thought the distance was less than 100 feet, only reinforces this conclusion.

The district court clearly erred in concluding that Alvarado-Zarza's stop was justified by reasonable suspicion. Accordingly, the evidence obtained pursuant to that stop must be suppressed.

REVERSED and REMANDED.