# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2276
_____

United States of America

*Plaintiff - Appellee*

v.

Gregory A. Fields

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 11, 2016
Filed: August 9, 2016
_____

Before LOKEN, ARNOLD, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Gregory A. Fields conditionally pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He appeals the district court's denial of his motion to suppress the firearm, which was seized during

an investigative stop.[1]  Fields also appeals his 37-month sentence.  Relying on the Supreme Court's post-sentencing decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), he argues the residual clause in U.S.S.G. § 4B1.2(a)(2) (2014) is unconstitutionally vague, and therefore the district court erred in concluding that his prior felony conviction for violating Mo. Rev. Stat. § 575.150 constituted a "crime of violence."  We conclude that Fields's motion to suppress was properly denied and affirm his conviction.  We vacate the sentence and remand.

## I.  The Suppression Issue.

At the suppression hearing, Kansas City Police Detective James Manley testified that, on the afternoon of December 28, 2013, marked patrol cars and detectives in unmarked cars conducted surveillance at the funeral of the victim of an unsolved homicide.  The surveillance was to protect the victim's family -- who had requested a police presence -- and to obtain information pertinent to the homicide investigation.  Manley testified that approximately one hundred people attended the funeral and that violence at funerals is not uncommon.

Shortly after the funeral ended at 4:00 p.m., Manley saw a Chevy Tahoe legally park some 150 feet from the funeral home, when there was available parking closer to the home.  Four men, including Fields, got out of the Tahoe and walked toward the funeral home.  They entered for a "couple minutes," then walked back out and stood next to the Tahoe.  Fields and another man then returned to the funeral home, stayed a "couple minutes," exited the building, and stood "on the opposite sides of the doorway" of the funeral home for approximately 15 minutes, acting "like they were waiting for something."  A funeral home employee telephoned Manley and told him

---

[1]The Hon. Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Hon. Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

the family did not know the men and were afraid for their safety. Manley thought it "possible" the men were associated with the homicide. He requested officers in the marked patrol cars to conduct a "pedestrian check" of the four men to determine their identities. Manley had no suspicion the men were committing a crime.

Patrol Officer Michael Sartain was assigned to watch the funeral home at 3:27 p.m. and parked his marked car approximately eighty feet from the funeral home. He observed two men silently stand on each side of the door for fifteen or twenty minutes, "as if they were protecting the door," and then rejoin the other two. Sartain, who had prior experience with violent confrontations at funerals, was generally suspicious and wondered if the two men were armed. But he did not see Fields do anything to suggest he was committing a crime nor make a movement suggesting he had a handgun.

At approximately 4:20 p.m., Sartain received the call that detectives wanted him to stop and identify the four men. Sartain drove toward the group. Fields walked away from the group toward Sartain's patrol car. Sartain noticed a bulge on Fields's right hip consistent with a gun. Sartain pulled his vehicle into a driveway to block Fields's path, exited the patrol car, and asked Fields if he was armed. Fields responded "yes," nodding in the direction of the bulge. Sartain handcuffed Fields, patted him down, and retrieved a loaded handgun from his waistband. Sartain later learned that Fields had a prior felony conviction and arrested him for being a felon in possession of a firearm. Fields also lacked a concealed weapons permit, a violation of Missouri law. See Mo. Rev. Stat. § 571.030.1(1).

After the hearing, Magistrate Judge Larsen filed a Report and Recommendation that Fields's motion be denied, concluding that the officers had reasonable suspicion to stop Fields and conduct a protective pat-down search for a firearm. In adopting the Report and Recommendation, Judge Sachs noted: "Unlike the situation where a bulge in clothing is deemed insufficient to suspect drug packaging, I accept the view

that a bulge covering a firearm is more readily suspected by experienced law enforcement officers, at least in circumstances similar to that at bar."

On appeal, Fields argues the police had "no reasonable suspicion to believe [he] was engaged in criminal activity" or committing a crime when he was stopped by Officer Sartain. Therefore, the investigative detention was unlawful, and the fruit of the pat-down search must be suppressed. Like the district court, we disagree.

A police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000), citing Terry v. Ohio, 392 U.S. 1, 30 (1968). "The existence of reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience." United States v. Horton, 611 F.3d 936, 940 (8th Cir. 2010), citing United States v. Arvizu, 534 U.S. 266, 273-74 (2002); see Ornelas v. United States, 517 U.S. 690, 699 (1996). "We review the district court's determination of reasonable suspicion *de novo*." United States v. Dupree, 202 F.3d 1046, 1048 (8th Cir. 2000). The government must prove that the officer had reasonable suspicion that criminal activity was afoot, not that the subject of the stop was actively engaged in a crime. See United States v. Carpenter, 462 F.3d 981, 986 (8th Cir. 2006), cert. denied, 549 U.S. 1343 (2007).

Detective Manley testified that the actions of the four men at the funeral home were sufficiently suspicious that he called on uniformed officers to conduct a "pedestrian check." The suspicious circumstances were that the funeral was for the victim of an unsolved homicide, so there was a heightened risk of violence; the victim's family had asked for a protective police presence; the four men arrived after the funeral services and parked further from the funeral home than necessary; two of the men stood silently on either side of the funeral home door for fifteen minutes, as

if standing guard; and a funeral home employee told Manley the family did not know the men and were concerned for their safety.

Officer Sartain responded to this call and approached Fields as he walked away from the group. When Sartain saw a bulge on Fields's hip consistent with a hidden firearm, he made a <u>Terry</u> stop and immediately asked Fields if he was armed. Whether Sartain would have detained Fields without this additional, highly relevant evidence that criminal activity may be afoot is irrelevant speculation. Sartain might simply have done the kind of "pedestrian check" the Fourth Amendment always permits -- "by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [and] by putting questions to him if the person is willing to listen." <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991) (quotation omitted). But with reasonable suspicion that Fields was carrying a concealed firearm, plus the other suspicious actions of the four men, we agree with the district court that Sartain's investigatory stop was consistent with the Fourth Amendment. <u>See</u> <u>Dupree</u>, 202 F.3d at 1049.

During a <u>Terry</u> stop, the officer may do a pat-down search for protective reasons "if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." <u>United States v. Davison</u>, 808 F.3d 325, 329 (8th Cir. 2015) (quotation omitted). Here, concerned for his safety, Sartain upon exiting his patrol car asked Fields if he was armed. Fields said yes and nodded toward the bulge on his hip, giving Sartain more than mere suspicion that Fields was armed and potentially dangerous.

## II. Sentencing Issues.

At the time of Fields's sentencing on March 10, 2014, the advisory guidelines provided that the base offense level for Fields's felon in possession offense was 20 if he "committed any part of the instant offense subsequent to sustaining one felony

conviction of either a crime of violence or a controlled substance offense." U.S.S.G. §§ 2K2.1(a)(4)(A). "Crime of violence" was defined as having "the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." § 2K2.1, comment. (n.1). "Crime of violence" was defined in § 4B1.2(a):

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[2]

The Presentence Investigation Report (PSR) recommended a base offense level of 20 because Fields's Missouri felony conviction for resisting arrest in violation of Mo. Rev. Stat. § 575.150 was a crime of violence under these guidelines provisions. Fields's attorney objected that the offense should not be counted as a crime of violence because it does not require intentional conduct. The Probation Officer responded that the Eighth Circuit has held that a prior conviction under § 575.150 is a crime of violence. See United States v. Dunning, 666 F.3d 1158, 1166 (8th Cir. 2012); United States v. Hudson, 577 F.3d 883, 886 (8th Cir. 2009), cert. denied, 559 U.S. 915 (2010).

At the sentencing hearing, counsel and the court noted that Johnson v. United States was pending before the Supreme Court and presented the issue whether the identically-worded residual clause in the Armed Career Criminal Act ("ACCA"), 18

---

[2]Application Note 1(B) to § 4B1.2 modified the residual clause of § 4B1.2(a)(2) by adding "by its nature," an addition that may prove significant when the Supreme Court considers whether that clause is void for vagueness.

U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. Defense counsel made this vagueness objection for the record and agreed that sentencing should proceed. The district court then adopted the PSR as its findings and conclusions "on the current law of the Eighth Circuit." The court enhanced the base offense level from 14 to 20 under § 2K2.1(a)(4)(A) and sentenced Fields to 37 months in prison, the bottom of his advisory guidelines range.

One month later, the Supreme Court held in Johnson that the residual clause of the ACCA is unconstitutionally vague in violation of the Fifth Amendment guarantee of due process. 135 S. Ct. at 2557. This decision immediately raised the issue -- not decided in Johnson -- whether the identically-worded residual clause in § 4B1.2(a)(2) is unconstitutionally vague, as Fields now argues and the government concedes on appeal. Though we are not bound by the government's concession, we have joined those circuits that remand sentencing appeals raising this issue, leaving "for the district court on remand the question of whether the residual clause of the career offender guideline is unconstitutional." United States v. Taylor, 803 F.3d 931, 933 (8th Cir. 2015). As the government does not argue that any error was harmless, we are bound to follow Taylor and remand for further sentencing proceedings.[3] We note that further guidance on the vagueness question *may* be imminent, given the Supreme Court's recent grant of certiorari in Beckles v. United States, 616 F. App'x 415 (11th Cir. 2015), cert. granted, 2016 WL 1029080 (June 27, 2016).

The constitutionality of the residual clause in § 4B1.2(a)(2) is not the only sentencing issue the district court should consider on remand. Our prior cases explicitly held that a violation of Mo. Rev. Stat. § 575.150.5 was a crime of violence

---

[3]We note the Supreme Court recently held that "in most cases" a determination that defendant was sentenced under an incorrect guidelines range will "establish an effect on substantial rights for purposes of obtaining relief under Rule 52(b)" of the Federal Rules of Criminal Procedure. Molina-Martinez v. United States, 136 S. Ct. 1338, 1349 (2016).

under the guidelines' residual clause.  See United States v. Ellis, 815 F.3d 419, 420 (8th Cir. 2016); Dunning, 666 F.3d at 1166; Hudson, 577 F.3d at 886.  If those decisions are no longer controlling because the residual clause in § 4B1.2(a)(2) is unconstitutionally vague, the question remains whether Fields's prior conviction was categorically a crime of violence under the force clause in § 4B1.2(a)(1).

We have held that § 575.150 is a divisible statute permitting use of the modified categorical approach to assess whether a particular violation was a crime of violence under the "force clause."  United States v. Shockley, 816 F.3d 1058, 1063 (8th Cir. 2016).[4]  Fields's PSR recited that "court records" show he was convicted of violating § 575.150.5, which provides that certain violations of § 575.150 are Class D felonies, including the offense of "[r]esisting an arrest, detention or stop by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person."  As in Shockley, 516 F.3d at 1063-64, the district court made no determination whether Fields's violation of § 575.150 was a crime of violence under U.S.S.G. § 4B1.2(a)(1), and the record on appeal does not include the "narrow class of documents" needed to apply the modified categorical approach to this prior conviction.  Therefore, the district court will need to take up this issue on remand.

Having ignored the issue at sentencing, the government asserts on appeal that an offense under § 575.150.5 "does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another,'" citing our decision in United States v. Torres-Villalobos, 487 F.3d 607, 614-15 (8th Cir. 2007).  The citation is misguided.  Torres-Villalobos held only that a manslaughter offense that had no *mens rea* element, or required only a showing of negligence, did not meet the use-of-force requirement in 18 U.S.C. § 16(b) as construed in Leocal v. Ashcroft, 543

---

[4]We express no view as to whether the Supreme Court's more recent decision in Mathis v. United States, 136 S. Ct. 2243 (2016), casts doubt on this ruling.

U.S. 1, 8-12 (2004). By contrast, § 575.150.5 has two *mens rea* elements. First, the defendant must be fleeing from an arrest, detention or stop; this is intentional conduct far different from the DUI offense at issue in <u>Leocal</u>. Second, the fleeing must be done "in such a manner that the person fleeing *creates* a substantial risk of serious physical injury or death to any person." (Emphasis added.) Depending on how the statute has been interpreted by Missouri appellate courts, this would seem to require proof the defendant intentionally fled in a manner likely to result in the use of violent force against others, such as by speeding through a congested urban area.

Lacking an adequate record and full briefing by the parties, we express no view as to whether a violation of § 575.150.5 is a crime of violence under the force clause in § 4B1.2(a)(1). We simply conclude this is a difficult issue requiring full analysis on remand, not the analytically flawed position taken by the government on appeal. If the government adheres to its position in the district court, we assume it will nonetheless assist in gathering whatever state court records are available so the district court can make a proper determination under the categorical or modified categorical approach, whichever the court concludes is more appropriate.

For the foregoing reasons, we affirm Fields's conviction. We vacate his sentence and remand for whatever additional sentencing proceedings the district court deems necessary to determine an appropriate sentence.

_____