JUSTICE BOATRIGHT, dissenting.
¶30 The majority finds Trooper Wall's interpretation of section 42-4-903(2), C.R.S. (2018), objectively unreasonable. I disagree for three reasons. First, Trooper Wall's interpretation of the statute was arguably correct. Second, even if his interpretation was incorrect, it was objectively reasonable. Finally, even if Trooper Wall was incorrect and objectively unreasonable, his conduct does not warrant application of the exclusionary rule. Therefore, I respectfully dissent.
¶31 While the majority correctly recites the facts, it is important to note the immediate circumstances of the traffic stop. Trooper Wall was driving on a highway with a speed limit of fifty-five miles per hour when he saw a car give two quick blinks of its turn signal and change lanes. At such a speed, that is not enough notice to change lanes safely. I must note that over 250,000 accidents are caused by lane-change errors each year in the United States, meaning that one lane-change accident occurs every two minutes. See Nat'l Highway Traffic & Safety Admin., U.S. Dep't of Transp., DOT HS 809 571, Analysis of Lane Change Crashes (Mar. 2003). We are clearly dealing with a safety issue that requires regulation by the legislature and, ultimately, law enforcement attention.
I. Trooper Wall's Interpretation of Section 42-4-903(2) Is Arguably Correct
¶32 The majority determines that Trooper Wall did not reasonably enforce subsection (2) of section 42-4-903 because the later subsection (4) distinguishes lane changes from turns. Maj. op. ¶¶ 23-24. But that distinction is not quite so simple.
¶33 When construing a statute, "[w]e must read the statute as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible." Whitaker v. People , 48 P.3d 555, 558 (Colo. 2002). The statute in question is titled "Turning movements and required signals," and it contains five subsections.
¶34 Subsection (1) explains when a signal must be given, describing situations such as turning at an intersection or onto a private road or turning from a direct course or moving a vehicle left or right:
No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 42-4-901, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal in the manner provided in sections 42-4-608 and 42-4-609.
§ 42-4-903(1) (emphasis added). The plain language of subsection (1) applies to lane changes, as a lane change is either "turn[ing] a vehicle from a direct course" or "mov[ing] right or left upon a roadway." Id. Thus, a *625 driver may not change lanes until the lane change "can be made with reasonable safety" and the driver has "giv[en] an appropriate signal." Id.
¶35 Subsection (2), without defining what constitutes a "turn," explains how long a signal must be given, and it gives two options based on the car's location and speed:
A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning in urban or metropolitan areas and shall be given continuously for at least two hundred feet on all four-lane highways and other highways where the prima facie or posted speed limit is more than forty miles per hour.
§ 42-4-903(2). Notably, subsection (2) does not require an intention to turn that causes a car to leave the highway or even an intention to turn that creates a complete change in direction.
¶36 Subsection (3) explains when signals (brake lights) are required for stops or sudden decreases in speed: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in sections 42-4-608 and 42-4-609 to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." § 42-4-903(3). While not applicable in this situation, as the signals referenced are brake lights, this subsection rounds out the situations where signals must be used.
¶37 Subsection (4) then explains how such signals should be used as well as how they should not be used:
The signals provided for in section 42-4-608(2) shall be used to indicate an intention to turn, change lanes, or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.
§ 42-4-903(4). The focus of subsection (4) is on the proper use of signals; they should be used to signal an intention to move but should not be used to signal an intention not to move. This is a logical provision to include in a signaling statute, as a signal cannot be effective if it is used to indicate contrary intentions.
¶38 Finally, subsection (5) explains that "[a]ny person who violates any provision of this section commits a class A traffic infraction." § 42-4-903(5).
¶39 Therefore, section 42-4-903(1) begins by listing the turning movements that require a signal, (2) next dictates for how long the signal must be given before so moving, (3) then sets forth the rule for when stopping or suddenly slowing requires a signal, (4) emphasizes when a signal should not be used, and (5) last sets forth the penalty for violations. Thus, when reading the statute as a whole, I do not believe that the legislature intended for subsection (4)-which explains when signals should not be used-to limit the scope of subsection (2)-which explains for how long signals must be used.
¶40 Moreover, it makes sense to require a signal for an adequate distance before changing lanes. If the purpose of a signal is to make other drivers aware of your intention to deviate from your current path of travel, requiring you to indicate that intent for a specific distance is reasonable regardless of how far off your current path you intend to deviate. Accordingly, I believe that Trooper Wall's interpretation of section 42-4-903(2) -that it applies to lane changes as well as turns-is arguably correct.
II. Even if Incorrect, Trooper Wall's Interpretation of Section 42-4-903 Is Objectively Reasonable
¶41 Even assuming that Trooper Wall's interpretation is incorrect (as the majority concludes), his interpretation was nevertheless objectively reasonable for two reasons. First, the Department of Revenue repeatedly interpreted the statute the same way as Trooper Wall when creating its own literature. And second, a federal district court, addressing a similar situation, found the same interpretation to be objectively reasonable.
¶42 I begin with the Department of Revenue's own literature. The Department creates such literature to educate the public *626 regarding Colorado traffic laws. And the most recent edition of the Department's Colorado Driver Handbook interprets section 42-4-903 's signaling requirements exactly as Trooper Wall did: "In urban or metropolitan areas, you must signal continuously for 100 feet before making a turn or lane change . On four-lane highways, where the posted speed limit is more than 40 mph, you must signal for 200 feet." Div. of Motor Vehicles, Colo. Dep't of Revenue, DR-2337, Colorado Driver Handbook 22 (2017) (emphasis added). This interpretation is consistent throughout the handbook.[1] When discussing turning, the handbook states that "[a]t speeds above 40 mph you must signal continuously for 200 feet before making a turn or lane change." Id. at 21. When discussing freeway driving, the handbook reminds drivers to "[s]ignal at least 200 feet before you change lanes and avoid frequent lane changes." Id. at 24. When explaining the driving test requirements, the handbook explains that one "performance requirement" of signaling on the test is that the driver "activates [the] signal the proper distance in advance of turning or making a lane change." Id. at 32.
¶43 The majority is correct that whether Trooper Wall read the Department of Revenue's driver handbook is irrelevant, as it would relate to Trooper Wall's subjective understanding of the statute. Maj. op. ¶ 27. The majority is also correct that the handbook does not supersede Colorado's statutory law. Id . Nevertheless, the interpretation in the handbook is relevant to whether Trooper Wall's interpretation of section 42-4-903(2) was objectively reasonable.
¶44 Giving further support to the objective reasonableness of Trooper Wall's interpretation is the U.S. District Court's reasoning in United States v. Rubio-Sepulveda , 237 F. Supp. 3d 1116 (D. Colo. 2017), appeal docketed , No. 18-1055 (10th Cir. Feb. 13, 2018). In that case, an officer interpreted section 42-4-903(2) in the same manner as Trooper Wall. Id. at 1122 n.4. The federal district court, relying on Heien , found that the officer's interpretation was mistaken but objectively reasonable. Id. In doing so, the federal district court distinguished a Fifth Circuit case, which held "that the officer's mistaken interpretation of a similar Texas turn signal provision was not a reasonable mistake of law in part because (1) the Texas Driver's Manuel [sic] supported an interpretation contrary to the officer's, i.e. supported a plain reading of the statutory provision, and (2) the Texas Court of Appeals had recently clarified the issue." Id. (citing United States v. Alvarado-Zarza , 782 F.3d 246, 250 (5th Cir. 2015) ). Remarkably, our situation here is the complete opposite. Colorado's driver handbook supports Trooper Wall's interpretation of the statute. And, finally, at the time of Trooper Wall's actions, no Colorado appellate court had interpreted section 42-4-903(2) in any way, let alone in a way that says the signaling requirements do not apply to lane changes.[2]
¶45 Trooper Wall interpreted section 42-4-903(2) the same way the Department of Revenue has been interpreting it for at least six years and in a manner that a different court found objectively reasonable. As such, even if Trooper Wall's interpretation was incorrect, it was objectively reasonable.
III. The Exclusionary Rule Should Not Apply
¶46 The majority today determines that there was a Fourth Amendment violation, but it declines to address whether suppression *627 is warranted because the People framed the issue around Trooper Wall's objective reasonableness. This misses the point. In affirming the trial court's suppression order, the majority is implicitly affirming the trial court's determination that suppression was warranted. In fact, the notice of appeal states: "This interlocutory appeal is of the district court's ruling suppressing the evidence obtained as a result of the traffic stop." Notice of Appeal at 3 (emphasis added). Additionally, in the People's opening brief, they explain that "[t]he issue to be decided [is] whether the district court erred in granting defendant's motion to suppress evidence." Opening Br. at 7. Thus, in refusing to consider whether the exclusionary rule should apply, the majority misses the central question raised in this case.
¶47 At the end of the day, the question of whether the exclusionary rule should apply comes down to whether the officer's misconduct can and should be effectively deterred. "[T]he exclusionary rule should not automatically apply every time a Fourth Amendment violation is found; rather, it should apply only in those circumstances where its remedial objectives are actually served by suppression." People v. Gutierrez , 222 P.3d 925, 941 (Colo. 2009). "[T]he deterrence benefits of exclusion, and thus the [exclusionary] rule's application, depend on the culpability of the law enforcement conduct at issue." Casillas v. People , 2018 CO 78M, ¶ 34, 427 P.3d 804, 813. "Because the exclusionary rule 'serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence,' to warrant its application, law enforcement conduct must be 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.' " Id. at ¶ 22, 427 P.3d at 810 (quoting Herring v. United States , 555 U.S. 135, 144, 129 S. Ct. 695, 172 L.Ed.2d 496 (2009) ). Thus, the deterrence value of merely negligent conduct is not sufficient to warrant the cost of the exclusionary rule. See Herring , 555 U.S. at 147-48, 129 S. Ct. 695 ("[W]hen police mistakes are the result of negligence ... rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' " (quoting United States v. Leon , 468 U.S. 897, 907 n.6, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984) )).
¶48 Therefore, even were I to accept the majority's conclusion that Trooper Wall's interpretation was objectively unreasonable, that conclusion does not warrant suppression here. Mere negligence is insufficient to invoke the exclusionary rule; and, the majority does not identify anything about Trooper Wall's conduct that rose to the level of gross negligence, thus making it "sufficiently culpable" such that the exclusionary rule should apply.
¶49 Trooper Wall's interpretation of the statute is arguably a safer interpretation of the law. The question of whether lane changes are in fact "turns" is more nuanced than the majority gives it credit for, as evidenced by the Department of Revenue's own publication. Moreover, the federal district court in Rubio-Sepulveda found that the same interpretation, under similar circumstances, did not rise even to the level of ordinary negligence, let alone gross negligence.
Conclusion
¶50 I believe that Trooper Wall's interpretation of the statute was correct. Even if his interpretation was incorrect, however, it was objectively reasonable. And even if his interpretation was objectively unreasonable, his conduct did not rise to the level of gross negligence that is required to apply the exclusionary rule. As such, I would reverse the trial court's suppression order. Accordingly, I respectfully dissent.
I am authorized to state that CHIEF JUSTICE COATS joins in this dissent.

The previous edition of the Colorado Driver Handbook contained the same interpretation. See Div. of Motor Vehicles, Colo. Dep't of Revenue, DR-2337, Colorado Driver Handbook 18, 21, 27 (2012).

The defense argues that "even if section 42-4-903 could have been construed as ambiguous before Rubio-Sepulveda was issued, that opinion put officers on notice that section 42-4-903(2) does not apply to lane changes." Answer Br. at 17. While the Rubio-Sepulveda Court found the officer's reading of the statute to be mistaken, it reached that conclusion in a footnote. Despite that footnote, the court relied on a different theory altogether to hold that the stop was legal. Rubio-Sepulveda , 237 F. Supp. 3d at 1122 n.4. As such, the court's interpretation of the statute is dicta. While I hold law enforcement to a high standard and expect officers to know the law, to conclude that this trooper acted objectively unreasonably because he was put on notice by an arguably irrelevant footnote in a non-binding case is unrealistic.