# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 19-30081

———————

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARVA FLENORY,

Defendant - Appellant

**************************************

Consolidated with 19-30085

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSEPH WILBON,

Defendant - Appellant

————————————

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 2:16-CR-300-2
USDC No. 2:16-CR-300-1

————————————

No. 19-30081
c/w No. 19-30085

Before KING, JONES, and COSTA, Circuit Judges.

PER CURIAM:*

In 2016, Marva Flenory and Joseph Wilbon both pleaded guilty to possession with intent to distribute cocaine but reserved their right to appeal an adverse ruling on their motions to suppress. Flenory and Wilbon argue that suppression was appropriate because a police officer seized them longer than necessary during a traffic stop. Because Flenory and Wilbon have not established reversible error, we affirm the district court's judgment.

## I.

In June 2016, Chris Hill, a Louisiana State Trooper, pulled over a tan Chevrolet Equinox after it drifted into the next lane on Interstate 10 in Calcasieu Parish. Hill instructed the driver, Wilbon, to step to the rear of the vehicle. Hill informed Wilbon why he had been stopped, and Wilbon volunteered that he had not been drinking and was not sleepy. Hill stated that Wilbon laughed as he offered this information. Upon request, Wilbon produced his driver's license, which was a commercial driver's license with a Pittsburgh address.

Hill then asked a series of questions and found Wilbon's answers to be unsatisfactory. Among other things, Wilbon (1) stated that he was driving from Houston to Pittsburgh, although he was not on the shortest route between the two cities; (2) hesitated when asked where he had stayed in Houston, and first answered that he stayed near the "Willow Mall," which Hill did not think existed in Houston;[1] (3) revealed that he had spent just a few days in Houston,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] While there is no "Willow Mall" in Houston, there is a Willowbrook Mall.

2

despite it being approximately a twenty-hour drive from Pittsburgh; (4) volunteered his medical card, which commercial drivers must carry, in what Hill perceived was an attempt to "hurry the stop along"; and (5) did not directly answer why he drove to Houston instead of flying. Wilbon continued to laugh in a light-hearted manner during this conversation.

Hill then questioned Flenory, the passenger in the vehicle. Flenory stated that they were headed to New Orleans, which Wilbon had not mentioned, and that they would "probably stay overnight." Flenory stated that they arrived in Houston "last Thursday," which appeared to differ from Wilbon's account of their arrival date by over a week. As Hill returned to his own vehicle, Flenory volunteered that she was retired.

Hill later ran computer checks on Wilbon's and Flenory's driver's licenses. This check revealed that Wilbon had a history of arrests, including for drug offenses, and that Flenory had a history of arrests as well. During the computer check, Hill asked Wilbon about discrepancies between his and Flenory's accounts of their travel schedule. According to Hill, Wilbon then became defensive and insisted that Flenory was wrong. Hill asked for consent to search the car, which Wilbon refused. Wilbon also became more defensive, cursed, and insisted that Flenory was mistaken about their travel dates. Hill then summoned a drug-sniffing dog, which alerted the officers to several kilograms of cocaine in the car.

Wilbon and Flenory were charged with intent to distribute cocaine. Both filed motions to suppress the evidence from the traffic stop, asserting that Hill seized them longer than the Fourth Amendment permits because he lacked a reasonable suspicion of criminal activity after he conducted a computer check of Wilbon and Flenory. A magistrate judge recommended denying these motions, noting that Hill's reasonable suspicion was "highly credible" given inconsistencies in the defendants' stories, Wilbon's past drug arrests, Wilbon's

unusual laughter and shifting demeanor, and I-10's status as a drug-trafficking route, among other things. The district court adopted the magistrate judge's report and recommendations, and this appeal followed.

## II.

"In considering a district court's decision on a motion to suppress, this court reviews findings of facts for clear error and conclusions of law *de novo*. All record evidence is viewed 'in the light most favorable to the party who prevailed in the district court.'" *United States v. Massi*, 761 F.3d 512, 519-20 (5th Cir. 2014) (citation omitted) (quoting *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993)). The district court's judgment "should be upheld 'if there is any reasonable view of the evidence to support it.'" *Id.* at 520 (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)).

### A.

Under the Fourth Amendment, a traffic stop must be justified by reasonable suspicion. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "[T]he officer's action [must be]: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

Under the second prong, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* (quoting *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc)). During the stop, the officer may "examine the driver's license and registration," "run a computer check," and "ask the driver about the purpose and itinerary of his trip." *Id.* at 430-31.

While the "inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion" unless "additional reasonable suspicion arises . . . before the initial purpose of the stop

has been fulfilled." *Id.* at 431. At this point, the "relevant question" is "whether a detention extends beyond a reasonable duration," which is based on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Brigham*, 382 F.3d at 511 (citation omitted). This standard "falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). A court should look to whether the "totality of the circumstances" creates a reasonable suspicion of criminal activity, rather than engaging in a "divide-and-conquer" analysis that asks whether each suspicious fact has an innocent explanation. *Arvizu*, 534 U.S. at 274.

**B.**

The parties dispute whether Hill had reasonable suspicion to continue the traffic stop after he finished the computer check. For the following reasons, we affirm the district court's judgment that Hill had reasonable suspicion to prolong the stop.

As a preliminary matter, Wilbon and Flenory were traveling on I-10, a major drug-trafficking route, from Houston, a source city for drugs. These facts lean in favor of reasonable suspicion. *See, e.g.*, *United States v. Cervantes*, 797 F.3d 326, 336 (5th Cir. 2015) (noting that highway's "reputation as a smuggling route weighs in favor of reasonable suspicion"); *United States v. Simmons*, 918 F.2d 476, 481 (5th Cir. 1990) (coming from a "known source city" leans in favor of reasonable suspicion).

Wilbon's statements also aroused suspicion. Wilbon hesitated when asked where he had been staying, and he first stated that he had stayed near

the Willow Mall, which Hill did not think was in Houston.[2] *Cf. United States v. Beltran*, 650 F. App'x 206, 208 (5th Cir. 2016) (ruling that defendant's "not know[ing] the address" after "visiting his brother" weighs in favor of reasonable suspicion). His travel itinerary suggested a twenty- to twenty-one-hour drive each way, with only four full days in Houston, which is consistent with drug trafficking. *Cf. Sokolow*, 490 U.S. at 9 (noting that "few residents of Honolulu travel from that city for 20 hours to spend 48 hours in Miami"). He later volunteered a medical card without being asked, which Hill interpreted as an attempt "to hurry the stop along" or change the conversation. Wilbon also seemed to laugh in response to events that were not funny, and evaded questions regarding why he chose an inefficient route. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion.").

Wilbon's mood soured when he was asked about inconsistencies in his and Flenory's accounts of their travel plans. *Cf. United States v. Vazquez*, 253 F. App'x 365, 370 (5th Cir. 2007) (stating that "inconsistent answers regarding the travel itinerary" favor reasonable suspicion); *United States v. Kohler*, 836 F.2d 885, 887-88 (5th Cir. 1988) (noting a change from a "relaxed and low-key" to a "strained and agitated" demeanor). Hill also learned Wilbon had a criminal history that included drug arrests.

Flenory's responses only furthered Hill's suspicion. She said that they were stopping in New Orleans, which Wilbon did not mention. Flenory stated that they would "probably" stay there overnight. Her itinerary also appeared to differ from Wilbon's by over a week. Flenory volunteered personal information about her retirement that Hill interpreted as her attempt to craft

---

[2] The existence of a Willowbrook Mall in Houston does not negate Hill's reasonable suspicion. *Cf. United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (noting that reasonable suspicion can rely upon a mistake of fact if it is "objectively reasonable").

a more plausible story. *Cf. United States v. Davis*, 620 F. App'x 295, 300 (5th Cir. 2015) (observing that volunteered "out-of-context" information can support reasonable suspicion).

In sum, the inconsistent travel stories of Wilbon and Flenory, their long-distance travel on a known drug-trafficking route, Wilbon's criminal history, and Wilbon's shifting demeanor created reasonable suspicion that criminal activity was afoot. Although some factors "by themselves may appear innocent, [they] may in the aggregate rise to the level of reasonable suspicion." *Massi*, 761 F.3d at 521 (quoting *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)). Accordingly, the district court reasonably concluded that Hill had reasonable suspicion to continue the traffic stop after he conducted computer checks on Wilbon and Flenory.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.