# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2784
_____

United States of America

*Plaintiff - Appellee*

v.

Aaron Cardinale

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 16, 2025
Filed: August 4, 2025
_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

SMITH, Circuit Judge.

Aaron Cardinale entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2) after the district court[1] denied his motion to suppress evidence recovered from a traffic stop. He now appeals that denial, arguing that the

---

[1]The Honorable Robert F. Rossiter Jr., Chief Judge, United States District Court for the District of Nebraska.

district court erred in determining that the officer was reasonable in his belief that the stop was justified. We affirm.

## I. *Background*

Early in the morning on July 27, 2022, Omaha Police Officers Daniel Cleveland and Jared Freyermuth were on patrol in Omaha, Nebraska. The officers saw a Chevrolet Malibu at a nearby gas station and decided to investigate. They discovered that it was registered to Linda Loury, who had a history of methamphetamine use and a suspended license. They observed a man, later determined to be Cardinale, get into the driver's seat and a woman get into the passenger seat. The officers followed them as they left the gas station.

After leaving the gas station, Cardinale began driving on Deer Park Boulevard. Cardinale activated his left turn signal and made a left turn onto 15th Street. According to the officers, they observed Cardinale fail to signal for the left turn more than 100 feet in advance of the turn as required by Nebraska law. *See* Neb. Rev. Stat. § 60-6,161(2). They stopped him. During the stop, the officers had a K-9 dog conduct a sniff of the car. The dog alerted to drugs, and the officers arrested Cardinale.

Cardinale was subsequently indicted with one count of possession with intent to distribute more than 50 grams of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Cardinale moved to suppress the evidence against him. Relevant to this appeal, he contends that the officers stopped the vehicle without reasonable suspicion. At the suppression hearing, the magistrate judge recounted the officers' testimony as follows:

> Officer Cleveland stated that as the officers were following the Malibu, he noticed it increase[d] speed as it approached 15th Street, while it was still westbound on Deer Park Boulevard. Officer Cleveland testified he did not know the Malibu's intended destination, but that the Malibu's acceleration was consistent with an attempt to evade police.

-2-

Officer Cleveland testified that while it was still westbound on Deer Park Boulevard, the Malibu's turn signal activated, and the Malibu immediately made a left turn onto 15th Street. Officer Cleveland testified he did not know how much distance was between the cruiser and the Malibu as the Malibu turned left onto 15th Street. The cruiser camera shows that it took the cruiser about 20 seconds to go down Deer Park Boulevard and turn left. Officer Cleveland also testified he does not know how much distance is between 13th and 14th Streets, or how much distance is between 14th and 15th Streets. Officer Cleveland stated that based on his training and experience, as well as years of working accidents, and general speed estimation and time, the signal activated less than 100 feet before the turn onto 15th Street, which is a violation of Nebraska law. . . . Officer Cleveland testified [that] the officers then activated the cruiser's overhead lights to notify the occupants of the Malibu that the officers were conducting a traffic stop.

R. Doc. 74, at 3 (citations omitted).

The magistrate judge recommended that the motion be denied, and the district court agreed with its recommendation that a reasonable officer could have believed that Cardinale did not signal at least 100 feet or more before he turned onto 15th Street. The court relied primarily on Officer Cleveland's testimony that he saw Cardinale activate his signal "[j]ust prior to making the turn onto 15th Street, . . . which was not prior to 100 feet" before Cardinale executed the turn as required by Nebraska law. R. Doc. 73, at 8. The district court also reviewed the police video evidence and Cardinale's other exhibits, including maps and mathematical equations. It determined that the evidence did not clearly show that Officer Cleveland's belief that Cardinale failed to signal properly was objectively unreasonable. The district court considered Cardinale's suggested standard for officers' judgment in such matters to be unreasonable. It would "assume officers could make the sophisticated, mathematical calculations . . . while patrolling in a moving cruiser." R. Doc. 76, at 6.

Cardinale filed a motion to reconsider the district court's order, urging the court to resolve the evidentiary dispute allegedly shown by his exhibits. He argued that the district court cut short any analysis of the government's evidence by simply relying on Officer Cleveland's testimony. The district court denied the motion, responding that it based its conclusion on "the entire record, including Officer Cleveland's testimony, the video footage, and Cardinale's exhibits, in concluding that a 'reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred.'" R. Doc. 82, at 4 (quoting *United States v. Rederick*, 65 F.4th 961, 965 (8th Cir. 2023)). Cardinale argued that Officer Cleveland's testimony failed to provide the requisite "historical facts" that could add up to probable cause to support the government's burden. *Id*. at 5 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). The district court stated that the dash camera footage provided relative context "of the contemporaneous events and vantage point through which a reasonable officer would have perceived the incident." *Id*. Cardinale also argued that the district court failed to consider his mathematical equations that showed the "reality" needed to assess the reasonableness of the stop. *Id*. The district court responded by noting that those arguments had been considered, but the "pinpoint scientific accuracy of [Cardinale's] calculations was [not] clearly deducible from the footage nor necessary to making a well-founded probable cause conclusion in the context of this case." *Id*. (citing *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (stating that reasonableness does not require perfection and that the Fourth Amendment tolerates officers' reasonable mistakes of fact); *New v. Denver*, 787 F.3d 895, 900–01 (8th Cir. 2015) (concluding that "hindsight evidence" was irrelevant to probable cause analysis)). Denied reconsideration, Cardinale then entered a conditional guilty plea enabling this appeal of the denial of his motion to suppress.

## II. *Discussion*

On appeal, Cardinale argues that the government did not present sufficient historical facts to conclude that the traffic stop was reasonable. He avers that Officer

Cleveland's testimony was too conclusory to establish the reasonableness of the stop.

"In evaluating the denial of a motion to suppress, we review the district court's legal conclusions de novo and factual findings for clear error." *United States v. Milk*, 66 F.4th 1121, 1130 (8th Cir. 2023) (quoting *United States v. Nyah*, 35 F.4th 1100, 1105 (8th Cir. 2022)). We will affirm the district court's denial of the motion unless it "is unsupported by substantial evidence, is based on an erroneous interpretation of the law, or it is clear, based on the entire record, that a mistake was made." *Id*. (quoting *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016)).

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Holly*, 983 F.3d 361, 364 (8th Cir. 2020) (quoting *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006)). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) (quoting *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008)). "[T]he concept of reasonable suspicion is composed of 'commonsense' and 'nontechnical' concepts instead of 'finely-tuned standards,' and determining whether there is reasonable suspicion depends on '"the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."'" *United States v. Dillard*, 825 F.3d 472, 474–75 (8th Cir. 2016) (quoting *Ornelas*, 517 U.S. at 695–96).

Cardinale principally relies on *United States v. Alvarado-Zarza*, 782 F.3d 246 (5th Cir. 2015). There, a Texas officer pulled over a driver for failing to activate his turn signal at least 100 feet in advance of his turn, in violation of Texas law. *Id*. at 248. At the suppression hearing, the officer testified that the defendant did not signal 100 feet before turning and that the turn began when he switched lanes prior to the turn, not when he actually turned left. *Id*. Texas law, however, differentiated between a lane change and a turn and only required a signal 100 feet before a turn. *Id*. at 250.

The officer's failure to distinguish between a lane change and a turn was an objectively unreasonable mistake of law per the Fifth Circuit in *Alvarado-Zarza*. *Id.*

The officer in *Alvarado-Zarza* also made a mistake of fact related to the distance that the vehicle traveled after the defendant activated the turn signal. *Id.* at 251. The defendant's expert witness had testified that the defendant activated his turn signal "200 feet before changing lanes and 300 feet before turning." *Id.* at 250. The Fifth Circuit concluded that because "of his mistaken assumption about the application of the 100–foot requirement," taken together with his testimony that he acted quickly and could not actually measure the signaling distance, his

> testimony did not provide the sort of specific, articulable facts which would allow a court to determine that he possessed a reasonable suspicion that [the defendant] had committed a traffic violation. The fact that the actual distance between the signal and the turn was approximately 300 feet, and that [the officer] provided no explanation as to why he might have thought the distance was less than 100 feet, only reinforces this conclusion.

*Id.* at 251. Although similar, there are two key distinctions between this case and *Alvarado-Zarza*. First, the defendant in *Alvarado-Zarza* had an expert witness testify specifically as to the distance of the lane change, which was "plainly supported" by the video, and the government there did not challenge those measurements. *Id.* Here, on the other hand, the video did not provide a clear record, as the video was "incredibly grainy and blurry" and of "very poor quality." R. Doc. 73, at 39–40. Furthermore, the government successfully disputed Cardinale's attempt to introduce distances based on a failure to provide a proper basis for the distances on maps that he attempted to bring into evidence. The *Alvarado-Zarza* court found no objective reasonable suspicion based on "[t]he fact that the actual distance between the signal and the turn was approximately 300 feet." 782 F.3d at 251. The actual distance is unknown in this case. Cardinale did not clearly establish any exact distances. Additionally, Officer Cleveland explained why he thought that a traffic violation had

occurred: Cardinale turned "almost immediately" after activating his turn signal. R. Doc. 73, at 46.

Several cases from this circuit provide helpful guidance. In *Holly*, officers pulled over Holly after observing him run a stop sign. 983 F.3d at 363. Holly disputed whether the officers could have seen him at the intersection given their obscured vantage point. *Id*. Holly presented evidence from investigators that allegedly showed that it would have been impossible for the officers to see him fail to stop at the stop sign because of an obstruction in their view from their vantage point on the road. *Id*. The officers, on the other hand, testified that they saw the vehicle fail to stop at the stop sign just after Holly passed the obstruction. *Id*. The court characterized their testimony as "[the officer] testified that based on his training and experience and the speed of Holly on College and in the intersection, he did not believe there was any way Holly stopped at the stop sign." *Id*. The district court credited the officers' testimony over the defense investigator's testimony. *Id*.

On appeal, this court held that the district court's decision to credit the officers' account over the experts' account was not clearly erroneous. *Id*. at 364. "[T]here is no extrinsic evidence that clearly contradicts the officers' account, nor was the officers' testimony 'so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it.'" *Id*. (quoting *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir. 1995)). Notably, Holly's "experts admitted [that] they were unable to recreate the exact circumstances of the events." *Id*. Like in *Holly*, there is no extrinsic evidence here that clearly refutes Officer Cleveland's testimony or is even inconsistent with that testimony. This record also lacks expert evidence disputing Officer Cleveland's testimony.

*United States v. Houston*, 548 F.3d 1151 (8th Cir. 2008), is also similar. There, an officer traveling in a patrol car approached an intersection traveling southbound when the traffic light turned green. *Id*. at 1152. As the light turned green, he could see Houston still traveling westbound through the intersection. *Id*. The subsequent stop resulted in an arrest for possession of cocaine, and Houston moved to suppress

based on a lack of probable cause that a traffic violation had occurred. *Id*. at 1153. Houston argued that the officer could not have ruled out possible hypothetical legal reasons for him being in the intersection. *Id*. However, relying on just the officer's testimony, this court stated that "the district court found credible [the officer's] testimony that he saw Houston run a red light. . . . These findings were supported by the record[,] and no evidence was introduced to the contrary." *Id*.

The officers in *Houston* and *Holly* were not required to present the type of evidence or show the understanding that Cardinale would require of Officer Cleveland. Cardinale argues that Officer Cleveland testified that he did not know various distances in the case, including the distance between his car and the Malibu at several points, the distance between several different streets, the length of the road in which Cardinale was driving before turning left, and different speeds of the vehicles involved at certain times. Neither *Houston* or *Holly* required such knowledge. Rather, in both cases, the officer relied on their experience and expertise to determine whether a traffic violation had occurred.

"The existence of reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience." *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016) (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)). "[I]t is well established that mistakes of law or fact, if objectively reasonable, may still justify a valid stop." *United States v. Rutledge*, 61 F.4th 597, 602 (8th Cir. 2023) (alteration in original) (quoting *United States v. James*, 52 F.4th 1035, 1038 (8th Cir. 2022)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Holly*, 983 F.3d at 364 (quoting *Heien*, 574 U.S. at 60–61). "Thus, even if [Cardinale] was not technically in violation of the Nebraska statute, if Officer [Cleveland] reasonably believed that [Cardinale] violated the statute, the stop was valid." *United States v. Flores-Sandoval*, 366 F.3d 961, 962 (8th Cir. 2004).

Officer Cleveland testified that in his training and experience, Cardinale did not activate his turn signal 100 feet prior to turning, as he turned "almost immediately" after activating the signal. R. Doc. 73, at 46. The district court credited this testimony. Officer Cleveland was not required to understand exact distances or speeds in making his decision to stop the vehicle, as he was only required to be reasonable, not perfect. *See Heien*, 574 U.S. at 60. None of the other evidence contradicts his testimony, and we give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699. Thus, the district court did not clearly err in crediting Officer Cleveland's testimony and finding that he had reasonable suspicion that a traffic violation had occurred.

### III. *Conclusion*

Accordingly, we affirm the district court's denial of Cardinale's motion to suppress evidence.

_____